Carson *v.* Ingalls.

CARSON & HARD *vs.* INGALLS.

A bond executed in pursuance of an agreement between the parties void for usury, but which bond is given not for money loaned at the time when either the bond or the agreement were made, or subsequently, but for $10,000 which had been advanced to the obligor, or to his firm, *previous* to the making of the agreement, is not affected, or rendered invalid, by the usurious character of the *agreement ;* especially where the agreement itself, on its face, shows that the money for which the bond was given was not loaned under or in pursuance of the agreement.

APPEAL from a judgment entered upon the report of a referee. The plaintiffs are, and have been since 1848, paper merchants in the city of New York. The defendant and one Putnam, from about 1850 to the making of the agreement hereinafter named, were paper manufacturers in Saratoga county, the plaintiffs being consignees of their paper. During that period the plaintiffs had advanced to Ingalls & Putnam, from time to time, various sums of money, so that on the 1st March, 1854, they were indebted to the plaintiffs in the sum of $10,000. At or about this last mentioned date the defendant bought out the interest of Putnam in the firm, and thereupon entered into an agreement in writing with the plaintiffs, which is dated March 1st, 1854, and recites : 1st. That the plaintiffs had theretofore advanced

to the defendant, or to the firm of Ingalls & Putnam, $10,000, which the defendant had assumed upon the dissolution of said firm. 2d. The agreement then covenants that the plaintiffs shall be interested in the business of the said party of the first part (the defendant) to the extent of said sum of $10,000; and the same shall, for the period of one year, &c. be deemed and taken as a part of the capital of the said business of the party of the first part contributed by the parties of the second part. 3d. The party of the first part, by the agreement, then guaranties to pay and allow to the said parties of the second part the gross net sum of $3000 yearly as their proportion of the profits and emoluments of said business. 4th. The party of the first part then covenants, in order more fully to secure the repayment of said $10,000, to execute and deliver a bond and mortgage upon all his mills, &c. conditioned for the payment of said sum in one year, &c. and to insure said buildings, and to assign the policies to the mortgagees. 5th. The defendant then covenants to consign to the plaintiffs all paper to be manufactured by him, and the plaintiffs agree to receive and sell the same on commission, upon the same terms in every respect as customary among commission merchants in the city of New York. 6th. Both parties then agree to render accounts to each other, at the expiration of every six months, and final adjustments and settlements thereof shall be made at the end of every year. In pursuance of said agreement, the defendant, on the 14th of March, 1854, executed a bond to the plaintiffs for $10,000, payable in one year, without interest, secured by a mortgage given by himself and wife on his mill property in Saratoga county; and the buildings therein were insured for about $10,000, and the policies assigned to the plaintiffs. July 1st, 1854, the accounts between the parties were made up and rendered to the defendant by the plaintiffs, in which the defendant was charged " to amount agreed on, $1500." On 1st January, 1855, the accounts were again made up and rendered, and the defendant charged with

" one half year's profits, as agreed, $1500." The business not proving as profitable as was expected, it was agreed, in April, 1855, that the plaintiffs' share of the profits for that year should be $2000. July 1st, 1855, the accounts were again made up and rendered, and the defendant was charged " to amount as agreed, $1000." January 1st, 1856, the accounts were again made up and rendered, and the defendant charged " to amount as agreed, $1000." The account was again made up and rendered, July 1st, 1856, and the same charge made. July 31st, 1856, the mills were destroyed by fire. Thereupon the business arrangement between the parties was discontinued, and the defendant charged thereafter with interest on the $10,000. The plaintiffs having collected the money due upon the policies of insurance on the 18th October, 1856, rendered the defendant an account, in which the defendant was charged with the $10,000, and a large amount of other moneys, making a total of $18,914.37, and was credited with the insurance money, and account of sales, amounting in the aggregate to $11,500.41, leaving a balance due the plaintiffs of $7623.59. Subsequently to the receipt of the insurance money by the plaintiffs the defendant desired to rebuild the mill, and to enable him to do so, it was agreed that the plaintiffs should advance the money, and that said bond and mortgage should thereupon remain in full force. The plaintiffs accordingly advanced the money, and the defendant rebuilt the mill. The accounts were subsequently again made by the plaintiffs, and rendered to defendant, whereby it appears the defendant was in debt to the plaintiffs, March 5th, 1858, $10,782.20. The amount due the plaintiffs, on 30th October, 1858, as appears by the exhibits, was $9955.86. This action was on the bond, and on the trial the plaintiffs sought to recover the last mentioned sum, as the amount due thereon. The defendant sought to defeat a recovery, on the ground that the original agreeement, on its face, was void for usury, and the bond and mortgage having been given thereunder, were void for the same reason.

The action was referred to C. A. Peabody, Esq., to hear and determine the same. He reported as conclusions of law, that the bond on which the suit is brought having been given as a part of a contract for the payment for the use of money at the rate above stated was void as being in violation of the statute prohibiting usury. That the contract set forth in the answer of the defendant, under which the bond in suit was given, was in effect, upon its face, a contract to pay for the use or forbearance of $10,000, the sum of $3000 per annum, and was therefore void. That the bond having been given in pursuance and execution of that contract was therefore void, and that the plaintiffs were not entitled to recover thereon. He further found and reported that the defendant was not entitled to recover the sums embraced in his counterclaim, or any part of them; and that the defendant was entitled to judgment against the plaintiffs for his costs herein. From the judgment entered upon this report the plaintiffs appealed.

*William Wakeman,* for the appellants. ·

*E. J. Spink,* for the respondent.

*By the Court,* SUTHERLAND, J. This action was brought on a penal bond, dated the 14th day of March, 1854, conditioned for the payment of $10,000, at the expiration of one year from the first day of January, 1854, without interest. The complaint alleges that the defendant, being indebted to the plaintiffs in the sum of $10,000, for the purpose of securing *such indebtedness* executed the bond.

The defendant in his answer admits (although it is not alleged in the complaint) that the plaintiffs, on or about the first day of March, 1854, *loaned* the defendant $10,000; and then avers that this *loan* was made upon a corrupt and usurious agreement, setting forth the agreement at large in the answer; and further avers that the bond on which the ac-

Carson *v.* Ingalls.

tion is brought was executed in pursuance of that corrupt and usurious agreement.

The answer also sets up a counter-claim for moneys alleged to have been had and received by the plaintiffs to and for the use of the defendant. The issues in the action were referred to the Hon. C. A. Peabody to hear and determine.

He found and reported, among other things, that the bond was executed under and in pursuance of the agreement set forth in the complaint; that the agreement on its face was made with a usurious and corrupt intent, and was void; and that the bond made under or in pursuance of it was also void.

The agreement, (which is under seal,) after reciting that the defendant was indebted to the plaintiffs in the sum of $10,000, " *heretofore advanced by them to him,* or to the firm of Ingalls & Putnam, in the course of their business transactions, the whole of which indebtedness the party of the first part had assumed upon the dissolution of said firm," contains a mutual covenant that the plaintiffs shall be interested in the business of the defendant, to the extent of said sum of $10,000, and that the same shall for the period of one year from the 1st day of January, 1854, and for as much longer as the parties shall thereafter agree, be deemed and taken as part of the capital of the business of the defendants; and the agreement also contains a guaranty on the part of the defendant *to pay and allow to the plaintiffs the gross net sum of* $3000 *yearly and every year,* during the continuance of the said agreement, as *their proportion of the profits and emoluments* of the said business. The agreement then provides that in order to secure the repayment of the said sum of $10,000 to the plaintiffs, the defendant shall execute his bond and a mortgage on his real estate, mills, &c. in Saratoga county, conditioned for the payment of said sum of $10,000, at the expiration of one year from the date thereof. The agreement further provides that the defendant will, during the continuance of the agreement, and of its extension, if extended, ship and consign to the plaintiffs all paper manu-

Carson *v.* Ingalls.

factured by him at his mills in Saratoga, to be sold by the plaintiffs upon such commission as is usually charged by commission paper merchants in the city of New York.

It is quite clear to me that the conclusion of the referee on these facts, that the bond was void, was erroneous. It is a conceded fact, and if not conceded the defendant would have been estopped from denying that the bond was given, not for money loaned at the time when either the bond or the agreement was made or subsequently, but for $10,000 which had been advanced to the defendant or to his firm *previous* to the making of the agreement. The agreement may have been made with an usurious intent, and as to the covenant to pay the plaintiffs the gross sum of $3000 for their share of the profits may have been usurious and void on its face, but that could not affect the bond given for, and only for, moneys previously, actually and bona fide loaned or advanced. The agreement itself, on its face, shows that the $10,000, for which the bond was given, was not loaned under or in pursuance of the usurious agreement, conceding it to be usurious.

It appears to me to be a very extraordinary conclusion to arrive at, that the plaintiffs must lose their $10,000, which they actually loaned or advanced before they thought of any usury or usurious agreement, because subsequently they may have undertaken to get more than seven per cent for it.

The bond may have been given in pursuance of the agreement, but the $10,000 was not loaned in pursuance of the agreement, but before. The bond was given for an honest debt and for nothing else. No usury was included in it.

Without examining any other question in the case, it is plain to me that the conclusion in relation to the bond, at which the referee arrived, was erroneous; and that the judgment should be reversed and a new trial ordered, with costs to abide the event.

New trial granted.

[New York General Term, February 4, 1861. *Clerke, Ingraham* and *Sutherland*, Justices.]