## CLAUDIUS B. KING

*v.*

## WILLIAM H. W. CUSHMAN *et al.*

1. SALE *of a mortgagee's interest in land, under execution—what will pass thereby.* Under the statute which declares that all interest of a judgment debtor, as mortgagee or mortgagor of land, shall be subject to sale on execution, no lien attaches to the notes secured by the mortgage held by such mortgagee, nor will the notes pass to the purchaser under a sale of the mortgagee's interest in the premises on execution.

2. EXECUTION SALES — *whether title passes by a sale on a day different from that fixed in the notice.* Where land is sold on execution, on a day prior to that specified in the notice of the sale, no title will pass to the purchaser at the sale, or to any subsequent grantee, if they have notice of the irregularity.

3. NOTICE — *who is chargeable with notice.* If the purchaser in such case is the plaintiff in the execution, he is chargeable with notice of such irregularity.

4. TRUSTEE — *buying in an outstanding title.* A court of equity, independent of any agreement, will consider money advanced by a trustee, to purchase in an outstanding title, as an advance for the benefit of his *cestui que trust,* and not for his own use, giving him a lien on the property, until he is reimbursed the advancement.

5. USURY — *when availing as a defense.* Where a party loans money to another at a usurious rate of interest, for the purpose of enabling the borrower to pay another debt which he owes, and for greater security to the lender the note and mortgage given to secure the prior debt are transferred to him, he cannot evade the effect of the usury laws upon the contract of loan which is tainted with usury, although the securities which were thus transferred to him were free from such taint.

APPEAL from the Circuit Court of La Salle county; the Hon. MADISON E. HOLLISTER, Judge, presiding.

This was a suit in chancery, instituted in the court below by Claudius B. King, against William H. W. Cushman, Hervey King and Samuel B. Gridley.

The facts of the case, so far as they are necessary to an understanding of the questions decided by the court, are as follows: On the 2d of December, 1858, the complainant, Claudius B. King, being indebted to Hunt, Osborne and Bacon, severally, in the aggregate sum of $3,524.44, borrowed

from the defendant Cushman that amount for the purpose of taking up the notes held by those creditors, representing their several claims; and gave to. Cushman his two notes, one for $3,850, payable in one year, with interest at ten per cent, and a small note for $24.74. The latter note was paid. The consideration for the note for $3,850 was $3,500, the residue, $350, being for interest.

The notes held by Hunt, Osborne and Bacon, and the mortgages given to secure them, were transferred to Cushman as security to him for the loan to King; and, for further security, King executed to Samuel B. Gridley a deed of trust, and also assigned to Cushman certain notes, amounting to $5,000, and a mortgage which was given to secure them, by Hervey King to the complainant.

While Cushman held these notes and the mortgage given by Hervey King, he obtained from Joseph O. Glover, for the consideration of $800, a quitclaim deed for the premises named in that mortgage, Glover having purchased them under an execution issued on a judgment in his favor against Claudius B. King and Hervey King, after the mortgage from Hervey King to Claudius was executed.

It appears that this sale under Glover's execution was made two days before the day fixed in the notice of the sale, and of this irregularity Cushman had notice when he took the deed from Glover. The deed from Glover to Cushman was executed under an agreement between Cushman and the Kings, for the protection of the securities held by Cushman and for the benefit of the Kings, the money being advanced by Cushman.

The complainant, Claudius B. King, seeks by this bill to compel Cushman to take the principal sum loaned by him to the complainant, $3,500, deducting $300 which he had already paid, with interest at six per cent, and to surrender to the complainant the securities which he had given him.

The court decreed that complainant pay to Cushman the sum of $3,500, the actual amount loaned, with interest at six per cent, less the sum of $300 previously paid, within twenty days after the entry of the decree; and that thereupon Cush-

man should surrender to complainant the notes and mortgages assigned to him by Hunt, Bacon and Osborne; that Gridley, the trustee, release to complainant all interest acquired by the deed of trust; but the court decreed that the title to the mortgage made by Hervey King to Claudius B. King was divested from the said Claudius, and vested in said Glover, and by virtue of the conveyance from Glover to Cushman became vested in the latter.

The complainant brings the case to this court by appeal, and insists that the latter clause of the decree is erroneous; that Cushman advanced the money to buy in the outstanding title to the Hervey King mortgage, or to the premises named in that mortgage, as trustee for the Kings, and to protect the securities held by Cushman, and, on payment of the debt intended to be thus secured, that title should be surrendered; and, moreover, that neither Glover nor Cushman took any title, by reason of the irregularity in the execution sale, of which they both had notice.

The appellee Cushman assigns a cross error; that the transfer of the Hunt, Bacon and Osborn notes and mortgages to him entitles him to the proceeds of those securities, although the amount would exceed the sum loaned to Claudius B. King, with legal interest, and those securities, being free from any taint of usury, could not be affected by a subsequent usurious contract between King and Cushman.

Messrs. LELAND & BLANCHARD, for the appellant.

Claudius B. King had no such interest in the real estate described in the mortgage as would make the purchaser at the sale on execution the owner of the notes secured by the mortgage. It is difficult to tell what the legislature really meant by the interest of the defendant, as mortgagee, in section one of chapter 57 (Purple's Stat. p. 642); but it seems to us it did not mean that a judgment became a lien upon the interest of the payee in a note of hand, though secured by mortgage; otherwise no person would be safe in buying a title, even before maturity, because there might be a mortgage securing it, and a judgment against the mortgagee, which was a lien upon it.

The mortgage is a mere incident to the note (*Sargent* v. *Howe et al.*, 21 Ill. 149); and an assignment of the note passes the mortgage as an incident.

The legislature must have meant, that, if the mortgagee had taken possession under his mortgage, or had taken some steps whereby he had acquired some interest in the real estate, by decree of foreclosure or otherwise, that interest might be sold on execution. It cannot be that the notes of hand passed by the sheriff's deed to Glover, and by the latter to Cushman, under the description of the premises named in the mortgage. But the title did not pass to Glover, because he was, as plaintiff in the execution, chargeable with constructive notice of the defect in the sale; nor to Cushman, because he had actual notice thereof. Inasmuch, however, as the two Kings also knew of it, they should pay Cushman the $800 he had advanced, with their consent, to remove a cloud upon the title to the property which he held as security, and the interest thereon, at six per cent.

Moreover, it was expressly agreed that the $800 was an advance by Cushman, as trustee, for his *cestuis que trust*, and he has merely a lien for it upon the property of the *cestuis que trust* in his hands.

Though there were no agreement at all, a court of equity will never allow a trustee to purchase in such an outstanding title for his own use, but will consider money so expended as an advance, to be repaid by the *cestui que trust*, if the latter desires to avail himself of the benefit of the purchase, and the trustee cannot speculate for his own benefit. The amount actually paid, not the face of the Glover judgment, is the true amount.

The following authorities, and many others, directly or indirectly support these two positions. It seems to us that the questions are really ones about which there is no room for debate, no conflict of authority. *Boyd* v. *Hawkins*, 2 Dev. Ch. 195; *McClanahan* v. *Henderson*, 2 A. K. M. 388; *Van Epps* v. *Van Epps*, 9 Paige Ch. 237; *Green* v. *Winter*, 1 Johns. Ch. 27; *Hawley* v. *Mancius*, 7 id. 174; *In the matter of Oakley*, 2 Edw. Ch. 478; *Platt* v. *Oliver*, 2 McLean, 267; *Orleans*

v. *Torrey*, 7 Hill, 260; *Slade* v. *Van Vechten*, 11 Paige, 21; *Pratt* v. *Thornton*, 28 Maine (15 Shep.) 355; *Crutchfield* v. *Haynes*, 14 Ala. 49; *Spindler* v. *Atkinson*, 3 Md. 409; *Lenox* v. *Notrebe*, and *Hailton* v. *Notrebe*, 1 Hemp. C. C. 251; *Jewett* v. *Miller*, 10 N. Y. (6 Seld.) 402; *Brantly* v. *Kee*, 5 Jones' Eq. (N. C.) 332; *Voris* v. *Thomas*, 12 Ill. 442; *Thorp et al.* v. *McCullom*, 1 Gilm. 625; *Pensonneau* v. *Blakely*, 14 Ill. 16; *Wickliff* v. *Robinson*, 18 id. 146; *Switzer* v. *Skiles*, 3 Gilm. 529; *Hitchcock* v. *Watson*, 18 Ill. 289; *Robbins* v. *Butler et al.*, 24 id. 432.

Mr. GEORGE C. CAMPBELL, for the appellee, Cushman, upon the cross error assigned, contends, that, whatever may be the finding as to the question of usury upon the $3,850 note, Cushman is now entitled to collect the amount due upon the Hunt, Bacon and Osborn notes, which amount to more than the $3,500 with six per cent, and that there is nothing in the agreement between King and Cushman as to the $3,580 note that in any way invalidates the antecedent notes and mortgages, or that can prevent Cushman from collecting their full amount.

A debt contracted on lawful interest is not avoided by a subsequent agreement to pay usury thereon. *Carson* v. *Ingalls*, 33 Barb. 657; *Bush* v. *Livingston*, 2 Cai. C. 66; *Pearsoll* v. *Kingsland*, 3 Edw. Ch. 195; *Lovett* v. *Dimond*, 4 id. 22; *Wells* v. *Chapman*, 13 Barb. 561; *Crane* v. *Hubbell*, 7 Paige, 413; *Judd* v. *Leiber*, 8 id. 548; *Swartwout* v. *Payne*, 19 Johns. 294; 4 Sand. Ch. 312; *Colyer* v. *Neville*, 3 Dev. 30; *McInhill* v. *Daggett*, 1 Branch, 356; *Parker* v. *Canson*, 2 Gr. 372; *Mitchell* v. *Colton*, 2 Fla. 136; *Troutman* v. *Barnett*, 9 Ga. 30; *Bagly* v. *Finn*, 1 Ohio, 409; *Pollard* v. *Bailors*, 6 Mumf. 434.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The principal objection made by appellant, to the decree of the Circuit Court, is directed to the last clause of it. After decreeing that the appellant pay to appellee the sum of thirty-five hundred dollars, with interest from December 2, 1858, at

six per cent per annum, less the sum of three hundred dollars paid on the 20th of April, 1858, within twenty days from the entry of the decree; and that thereupon appellee surrender to appellant the notes and mortgages assigned to him by Hunt, Osborn and Bacon ; and that Samuel B. Gridley convey to complainant, by deed of release, all interest acquired by him under a certain deed of trust,— it was further decreed that the title to the mortgage made by Hervey King and wife, to Claudius B. King and wife, be divested from them, and vested in Joseph O. Glover, and by *virtue of his conveyance to Cush-*man, to become vested in Cushman. This is the objectionable clause of the decree, and to understand the force of the objection, some facts must be stated.

Joseph O. Glover, on the 16th of October, 1858, had purchased, on an execution which issued on a judgment he had recovered against King and Brother, certain town lots in Ottawa. King and Brother were Claudius B. and Hervey King, and the lots were described as lot 2 in block 53, and lots 1, 2 and 3, in block 54 in the State's addition, the fee of which was in Hervey King. On these lots, Hervey King had, in May, 1857, executed a mortgage to Claudius, to secure five notes, each of one thousand dollars, payable in one, two, three, four and five years, with interest at ten per centum per annum. This mortgage at the time of the negotiations with Cushman, Claudius King assigned to Cushman and the notes also, as part security for the loan of thirty-five hundred dollars.

The sale of the lots to Glover was made by the sheriff on the 16th of October, 1858, when by the published notice it should have taken place on the 18th of that month. Appellant and appellee and Glover were cognizant of this fact, and had full notice of this irregularity. It was arranged between the Kings and Cushman on the 24th of May, 1863, Glover having obtained a sheriff's deed for the lots, that Cushman, to protect the securities given to him, and for the benefit of appellant and Hervey King, should buy Glover's title thus acquired; which he did, by the payment of eight hundred dollars, he, Cushman, taking the conveyance to himself.

Cushman now claims, that, by this purchase from Glover of his title acquired at the sale under the execution upon his judgment, he also acquired the notes and mortgage given to Claudius B. King by Hervey King, to pay which these lots were pledged.

How this can be, we are at a loss to understand, and have not been able to appreciate the argument of appellee's counsel in this behalf. He quotes a part of the first section of chapter 57, in relation to judgments and executions, in support of his proposition.

This section, after declaring what shall be subject to execution, provides, in the last clause, which he cites, as follows: " The term 'real estate,' in this section, shall be construed to include all interest of the defendant, or any person to his use, held or claimed by virtue of any deed, bond, covenant or otherwise, for a conveyance, or as mortgagee or mortgagor of land in fee, for life or for years." Scates' Comp. 603.

This simply means, as we understand it, by this expanded phraseology, that equitable interests or estates may be sold under execution. When Glover obtained his judgment against Claudius and Hervey King, the first named was mortgagee of the premises, of which the last named was the mortgagor. This statute was passed to enable a judgment creditor to sell upon execution the respective interests of the parties thus situated. The mortgage, as this court has repeatedly decided, was a mere incident of the note, and the statute could not mean, that the judgment should be a lien upon the note secured by the mortgage. It has never been understood, in such case, that notes so secured passed, by the sheriff's deed of the property pledged for their payment, to the purchaser of the property. We cannot perceive how the sale to Glover, under his judgment against Claudius and Hervey King, passed the interest in the notes which Claudius assigned to Cushman, nor the mortgage either. No lien attached to the notes. Glover's judgment was only $1,000, and the notes were for $5,000, which might be collected out of property of Hervey King, the maker, other than the lots. It would be unreasonable to *hold,*

they passed to Glover for $800, the sum at which he bid off the lots.

But no title really passed to Glover by his purchase at the sale, nor to Cushman by his purchase from Glover; for it is shown, Cushman had notice of the irregularity, and Glover, as plaintiff, was chargeable with notice, and the Kings knew it also; and, with the knowledge, the weight of the testimony clearly is, that the money paid by Cushman for this interest was as a trustee for the Kings, and for their benefit. A court of equity, independent of any agreement, would consider money advanced by a trustee, to purchase in an outstanding title, as an advance for the benefit of his *cestui que trust*, and not for his own use, giving him a lien on the property, until he was re-imbursed the advancement. The cases of *Thorp et al.* v. *McCullom*, 1 Gilm. 625; *Pensonneau* v. *Blakely*, 14 id. 16; *Wickliff* v. *Robinson*, 18 id. 146; *Hitchcock* v. *Watson*, id. 289, and *Robbins* v. *Butler*, 24 id. 432, cited by appellant's counsel, fully established the principle.

After the best consideration we have been enabled to give to this case, we have arrived at the conclusions above stated. Cushman must surrender those notes and sureties pledged to him by King, on the payment by appellant to him of the sum of $3,500, and interest at ten per cent per annum from the time it was received; and also the sum of $800 advanced by Cushman to purchase in Glover's title, and interest thereon at ten per cent per annum from the time Cushman made the advancement. We say ten per cent, because it appears that was the interest agreed upon for the money loaned, and we regard this advancement as so much money loaned.

The cross error assigned by appellee is not tenable. The proof is quite strong, that the mortgages given by King to Hunt, Bacon and Osborn, were paid by King, through checks on Cushman, the fund being provided by Cushman at a usurious rate of interest, and of which Cushman took an assignment to himself. The weight of evidence is, that the $350 was for usurious interest, and ought not to be allowed.

We have looked into the cases of *Carson and Hard* v. *Ingalls*,

33 Barb. 657, and *Bush* v. *Livingston*, 2 Caines' Cases, 66, cited by appellee. The first case decides, when a bond is executed in pursuance of an agreement between the parties, void for usury, but which bond is given, not for money loaned at the time when either the bond or the agreement was made, or subsequently, but for a sum of money which had been advanced to the obligor, or to his firm, previous to the making of the agreement, it is not affected or rendered invalid by the usurious character of the agreement, especially when the agreement itself, on its face, shows that the money for which the bond was given was not loaned under or in pursuance of the agreement. The case in 2 Caines is of like import, and differs essentially from the facts here. The notes and mortgages, when executed to Hunt and the others, were not tainted with usury; it was the loan of the money from Cushman to discharge them that bears the taint, and the defense of usury is leveled at this transaction altogether.

For the reasons given, we are of opinion, the decree should be so modified as to require Cushman to surrender up the securities he obtained from Claudius King, which were a lien on the lots bought of Glover, on his making the payments as above directed, and that appellee Cushman pay the costs of this court.

*Decree modified.*