JOHN O'HALLORAN

*v.*

JOHN FITZGERALD.

1. CHANCERY JURISDICTION—*matters of fraud and trust.* Where a party enters into possession of land as mortgagee and trustee of the owner, and in fraud of the owner's rights, while holding the land in such position, acquires tax titles on the same, a court of equity will have jurisdiction of a bill by the owner for redemption, and for an account of the rents and profits, and to remove the adverse title so acquired. In such a case, the main issue is one of fraud in the discharge of a trust, and not the technical validity of the tax titles.

2. TRUST—*title acquired by trustee in possession.* Where land was left by the owner in the possession of one as tenant and agent, to look after the same and to acquire the title to a part, and such agent, after the owner's death, procured a third person to advance $100 to secure the title for the benefit of the widow and heirs of the deceased owner, and gave him possession of the whole of the land out of which to reimburse himself, and

such third person, while so in possession, suffered the lands to go to sale, and thereby acquired tax titles to the same: *Held*, that he became a trustee for the heirs, and that the titles so acquired by him inured to the benefit of his *cestuis que trust*, but that he had a lien on the lands until reimbursed for all moneys advanced by him.

3. One in possession of land as trustee can not buy in an outstanding title, or purchase the land for taxes, and set up the title thus acquired to defeat the title of the *cestui que trust*, in equity.

4. ESTOPPEL—*to claim adversely to title under which a party enters.* It is a familiar rule of law, that a tenant or trustee who enters into possession of lands, can not claim adversely to the title under which he enters, without first surrendering the possession.

5. LIMITATION—*seven years—good faith.* A tax deed acquired by a trustee while in the possession of the land, by suffering it to go to sale, can not be set up by him as color of title acquired in good faith, to defeat a bill filed by the *cestui que trust* for an account and for redemption.

6. LACHES—*must be relied on in answer to defeat suit in equity.* Where the answer to a bill in chancery does not set up and rely on the *laches* of the complainant in bringing suit, the defendant can not rely on such *laches* in this court on appeal or error.

APPEAL from the Circuit Court of La Salle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. G. S. ELDRIDGE, for the appellant.

Messrs. GLOVER, COOK & CAMPBELL, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in chancery, filed by John Fitzgerald against John O'Halloran, in the county court of La Salle county, on the 22d day of January, 1869, and subsequently transferred to the circuit court.

The bill, in substance, alleges, that John Fitzgerald, the father of complainant, on the 11th day of June, 1847, bought of the United States the south-west quarter of the south-west quarter of section 28, township 35 north, range 3 east, and received a certificate of entry in the name of his wife, Catharine; that at the time of purchase he was in possession of the land, and also of the north-west quarter of the south-west

quarter of section 28, and had made valuable improvements on the last named lot, and wished to purchase it, but was informed it had been selected by the Illinois Central Railroad Co. as a part of its land grant under the act of Congress; that Fitzgerald left the State of Illinois, and placed one Patrick Connolly in possession of both tracts, arranged with him to purchase the railroad forty when it came into market; that in 1850 Fitzgerald died in Indiana, leaving Catharine, his widow, and Mary Shehan and complainant as his sole heirs; that on 23d of June, 1853, Connolly did purchase the railroad lot for $100, and received a deed; that previous to the purchase it was agreed between Connolly and appellant, that appellant should furnish the money to purchase the land, and Connolly should turn over possession of both forties as security for the payment of the $100, and that appellant should take care of the premises for the use and benefit of the widow and heirs of John Fitzgerald, all of which was done; that appellant, fraudulently contriving to cheat the widow and heirs of Fitzgerald, procured tax titles upon the premises, and now claimed to be the owner; that he had been in possession, and received the rents and profits from the time he and Connolly made the arrangement alleged, and the rents and profits exceeded all taxes and disbursements, and the $100 loan and interest; that on the 22d day of June, 1868, Connolly and wife conveyed the railroad forty to complainant, and on the same day Catharine Fitzgerald and Mary Shehan and her husband conveyed to him the other forty; that on the 1st day of August, 1868, complainant demanded of appellant possession of the premises, and, on account of his trust, that he refused, and fraudulently claimed to be the owner; that Mary Shehan was married when twenty years of age, and complainant is twenty-four.

The bill prays for an account, surrender of possession of the land, and general relief.

The answer denies the main allegations of the bill; admits defendant claims to be the legal owner of the land under tax

deeds and possession and payment of taxes on the land for seven successive years; avers tax deeds were acquired in good faith; insists that the matters alleged in the bill may be tried and determined in a court of law; and that complainant is not entitled to any relief in a court of equity.

To this answer replication was filed, and the cause heard on proofs taken, and decree rendered in favor of complainant, substantially as asked in the bill.

The first point made by appellant is, the bill presents no proper case calling for the exercise of the equitable jurisdiction of a court of chancery—that it is a mere attempt to try the validity of a tax title in a court of equity.

If this was true, the bill could not be maintained; but, upon an examination of the record, it will be seen that it is charged in the bill appellant entered into possession of the premises as mortgagee and trustee for the heirs of Fitzgerald, and that in fraud of their rights, while holding the land in that position, he acquired the tax titles.

The issue tendered by this allegation was one of fraud, and one that raised the question of the responsibilities and duties of a trustee to the *cestui que trust*, and not the technical validity of the tax titles. We do not entertain a doubt in regard to the allegations of the bill being sufficient to call into exercise the powers of a court of chancery.

It is claimed by appellant, that even were the bill sufficient, the proof offered to sustain the allegations did not warrant the decree.

The main point in dispute in the case, is in regard to the manner in which appellant acquired and held possession of these lands.

The evidence shows that, in 1847, the father of appellee was in possession of the land; that he went to Indiana, leaving one McCartha in possession, who occupied it that year, and the next year one O'Donnell lived thereon. In 1849 Connolly went into possession under Fitzgerald. He testifies: "In 1849 I moved on the place, and wrote Fitzgerald to know

what to do with the shares ; he wrote me to keep the shares, and we would make it all right when he came back."

There can be no question but in 1849 Connolly went into the possession of this land as the tenant of Fitzgerald, and so held it.

In 1850 Fitzgerald died intestate. In 1853 the possession of the land was surrendered to appellant. Connolly testifies: "I surrendered both forties to O'Halloran, in consideration of his advancing $100 to take out the certificate, upon the express agreement on the part of O'Halloran that he would hold both forties for the benefit of the widow and children of John Fitzgerald, and that he would surrender both tracts to said widow and children upon being paid back the $100, and his reasonable costs and expenses." This agreement is also proven by the testimony of Patrick Ferguson and Wm. O'Donnell; and there is no testimony in the record to conflict with this, except the deposition of appellant.

The fact, then, is established, by a clear preponderance of the evidence, that appellant went into the possession of this land to hold it for the benefit of the widow and heirs of Fitzgerald, and that he would surrender the same to them, on being paid back the $100 advanced and his reasonable expenses. It is, however, claimed, that Connolly was only the agent of John Fitzgerald, and on his death Connolly ceased to have any right to make any arrangement in regard to the land.

On the death of Fitzgerald, Connolly held the possession of this land for the widow and heirs, and was their tenant. His obligations and relations were the same towards them as they previously were to Fitzgerald ; and if it were true that Connolly did not strictly have the authority to make the arrangement made, appellant is in no position to take advantage of it. He could not be permitted to reap the benefits of the contract until the rents had paid him, as the evidence shows, a much larger sum than all advances by him made, and then dispute the title under which he entered.

After appellant obtained the possession of this land, under the contract with Connolly, he acquired the tax titles, and it is insisted they were acquired in good faith, and that appellant is entitled to protection under them, having paid taxes for seven successive years.

We can only regard appellant in the possession and management of this land as a trustee. The contract under which he acquired possession placed him there, in possession, for and under the title of the widow and heirs of John Fitzgerald, to hóld the land for their benefit. In 1854 he writes a letter to the widow, and in speaking in regard to forty acres of the land which then had been sold for taxes, he says: "I thought myself to purchase it, which I did with a view of preserving it for his children, should they ever come this way." This letter is another fact in proof, which tends to prove appellant was acting in this property not for himself, but in the capacity of a trustee.

If, then, he was a trustee, these tax titles which he purchased would not inure to his benefit, but to that of the *cestui que trust*. He would undoubtedly hold a lien on the property for all money advanced, until he was reimbursed. *King* v. *Cushman*, 41 Ill. 38. He could not buy in an outstanding title, and set up title in himself, nor could he buy in the land for taxes, and set up the title to defeat the title of the *cestui que trust*. *Moore* v. *Titman*, 44 Ill. 367 ; *Rand* v. *Scofield*, 43 Ill. 167 ; *Dennis* v. *McCagg*, 32 Ill. 429.

It is a familiar rule of law, that a tenant or trustee who enters into possession of lands can not claim adversely to the title under which he enters, without first surrendering the possession. If the law was otherwise, the grossest fraud and injustice might be practiced on the owner by a tenant or trustee. *Rigg* v. *Cook*, 4 Gilman, 351 ; *Lowe* v. *Emerson*, 48 Ill. 163 ; *Zeller's Lessee* v. *Eckert*, 4 Howard, 295.

The last point relied upon by appellant. is, that appellee is estopped on the ground of *laches*. This defense is not inter-

posed in the answer, and can not be relied upon here. *School Trustees* v. *Wright*, 12 Ill. 441 ; *Beach* v. *Shaw*, 57 Ill. 26.

Perceiving no error in the record, the decree of the circuit court will be affirmed.

*Decree affirmed.*