**John W. Reardon et al., Appellees, v. Lucian D. Taft and John Gray, Sheriff of Champaign County, Illinois, Appellants.**

## Gen. No. 7,763.

1. EXECUTIONS—*statutory right of redemption from certificate of levy.* The saving clause of the act of July 1, 1921, repealing the act of July 1, 1917, concerning judgments and decrees, includes the redemption of lands from certificates of levy.

2. TRUSTS—*trusts for creditors as specially within jurisdiction of equity.* Property included under assignments and conveyances to trustees for the benefit of creditors becomes the subject of a trust which it is the special jurisdiction of a court of equity to guard and protect.

3. TRUSTS—*individual benefit of trustees for creditors redeeming from certificate of levy.* Though a certificate of levy on property held by trustees for the benefit of creditors was not paid and canceled but was assigned to the trustees, no individual profit or benefit may be imputed to such trustees.

4. EXECUTIONS—*redemption from certificate of levy by trustees for creditors, as payment for benefit of trust.* Payment by trustees for the benefit of creditors of the amount due on a judgment under which a levy had been made on property held by them as trustees for the benefit of creditors constitutes a payment in satis-

faction of the judgment, giving such trustees merely a right to be reimbursed for the advancements they had made as trustees, regardless of the form of the transaction.

5. JUDICIAL AND EXECUTION SALES—*injunction to prevent sales.* Where the trustees for the benefit of creditors paid the amount due under a certain judgment against the debtors under which a levy had been made on real estate and another creditor with knowledge of the facts paid to the sheriff, the amount necessary to redeem from the levy, the debtors, the trustees and the other creditors will be entitled to an injunction to prevent a sale and such creditor will be decreed to hold whatever advantage he had obtained in the property as trustee for all the creditors.

6. TRUSTS—*trustees for creditors as chargeable with duty of diligence.* The rules as to diligence in the assertion of rights are not applicable to trustees.

Appeal by defendants from the Circuit Court of Champaign county; the Hon. GEORGE A. SENTEL, Judge, presiding. Heard in this court at the April term, 1924. Affirmed. Opinion filed October 22, 1924.

MILLER, GORHAM, WALES & NOXON and JOSEPH P. GULICK for appellants; RAYMOND S. PRUITT, of counsel.

H. L. JONES, HERRICK & HERRICK and GREEN & PALMER, for appellees.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

This case involves an appeal from an order of the circuit court of Champaign county, denying appellants' motion to dissolve an interlocutory injunction, and the appeal, under the statute, involves no other issue.

The case made by the charges in the bill which, by the motion, are admitted to be true, shows that on January 25, 1922, John W. Reardon and J. R. Harmon, as copartners, and John W. Reardon, individually, executed assignments and conveyances of all of their property to A. M. Burke of Champaign and

O. L. Gilmore of Fisher, both in this state, by two separate instruments.

In both of these instruments Burke and Gilmore were designated as trustees for the benefit of the creditors of Reardon and Harmon, and authorized to take and hold possession of the property so conveyed and assigned, convert it into cash and apply it in payment of the indebtedness of said Reardon and Harmon.

The assignments and conveyances covered 800 acres of farm land, also a large business building in the City of Champaign, and a large amount of personal property including certain grain elevators, automobile garage, equipment, etc. Of the lands conveyed 517 acres are involved in this suit, by the certificate of levy hereafter referred to.

At the date of the assignments by Reardon and Harmon it was thought that by prudent management the proceeds of the sale of this property would be sufficient to pay all their indebtedness, including not only their mortgage indebtedness but their general creditors as well. The Citizens State Bank, of which Burke is president, was one of the general creditors for an amount in excess of $6,000. The Fisher Bank, of which Gilmore was vice president, was also a general creditor of Reardon and Harmon. Gilmore himself was an unsecured creditor, personally, to whom Reardon and Harmon owed more than $5,000.

At that time there was of record in the circuit court of Champaign county a judgment against Reardon and Harmon in favor of Patrick Sheehan for $7,077.70, which had been rendered June 1, 1920, and on which no execution had been issued, but the case was pending on appeal in the Appellate Court.

On January 24, 1922 (the day before the assignments), three separate judgments were entered in the circuit court of Champaign county against Reardon and in favor of Lucille Miller, each for the sum of

$553.63, and on the same day, in the same court, a judgment was rendered against Reardon and Harmon and in favor of Irene Smith, for the sum of $1,930.67. Reardon and Harmon had given three separate mortgages to secure indebtedness aggregating the sum of $87,000 prior to the date of the Sheehan judgment, which are not affected by the proceedings in this case, and two mortgages subsequent to the date of the Sheehan judgment to secure indebtedness aggregating the sum of $38,200, and thereafter Reardon and Harmon had executed a trust deed to Sidney Gorham, as trustee, to secure a note for the sum of $10,500, held and owned by appellant Lucian D. Taft, which trust deed was recorded November 5, 1921.

It is conceded that the property of Reardon and Harmon is not sufficient to pay all of their debts and that they are insolvent.

Immediately after January 25, 1922, when the deeds of assignment from Reardon and Harmon to Burke and Gilmore, as trustees, were executed and delivered, the trustees entered upon the discharge of their duties by proceeding to convert certain of the personal property into cash; but by common agreement of the creditors, hoping for returning real estate values, the trustees were holding the land and leasing it, and attempting with the proceeds from the property to meet the interest as it matured on these various mortgages and pay the taxes as the same accrued.

The indebtedness secured by first mortgage liens drew interest at the rate of 5½ per cent, but that secured by the junior mortgage liens, including the Lucian D. Taft note, which was secured by the trust deed to Sidney Gorham, trustee, drew 7 per cent interest.

The trustees induced the various general creditors to refrain from taking judgments upon their respective claims against Reardon and Harmon. The creditors who had already taken judgments, other than

Patrick Sheehan, were persuaded to refrain from pressing collection of the same, so as to give the trustees an opportunity to work out satisfactory sales and have the property go as far as possible in satisfaction of the debts.

The Patrick Sheehan judgment was later affirmed by the Appellate Court [223 Ill. App. 365], and in May, 1922, an execution was issued on that judgment and a certificate of levy against the 517 acres involved in this case was filed June 27, 1922. The sheriff was about to sell the land on that certificate of levy. Thereupon, the creditors induced Burke and Gilmore, as trustees, to raise the funds necessary to pay off the Patrick Sheehan judgment; but since this money was being advanced by the trustees, it was agreed that they should have it returned to them before other claims were paid.

There is some question in the case as to the capacity in which Burke and Gilmore paid the Sheehan judgment and took over the certificate of levy made by the sheriff, in pursuance of the execution issued upon the Sheehan judgment May 16, 1922, and we therefore quote the allegations of the bill verbatim:

''That pursuant to negotiations, conferences and discussion with various creditors of the said Harmon and Reardon, for whose benefit the said trustees were acting, the said Gilmore and Burke, at the request of said creditors, both creditors whose claims were secured by mortgage or trust deed and general creditors whose claims were unsecured, the said trustees, O. L. Gilmore and A. M. Burke, were persuaded and induced to procure the funds with which to take over as trustees the certificate of levy upon the premises aforesaid, made pursuant to said judgment in favor of Patrick Sheehan, and thereupon the said trustees, Gilmore and Burke, did pay over to the said judgment creditor, Patrick Sheehan, the amount due upon his said judgment as evidenced by the said certificate of levy, in order to prevent forced sale of said prem-

ises under said certificate of levy or pursuant to law, to the detriment and damage of the said various creditors of Reardon and Harmon, with the agreement on the part of the interested parties that upon final liquidation, sale and disposition of the property held by said trustees under said assignments and conveyances from Reardon and Harmon, the said trustees should first reimburse themselves for the amount so advanced to take over said certificate of levy upon said judgment, together with interest thereon.''

It is conceded by both sides that the trustees paid the Sheehan judgment on or before June 27, 1923, within one year after filing for record the certificate of levy. While it is not charged in the bill that appellant Taft, as a mortgagee or creditor, had agreed and consented to all or any of the arrangements and conveyances between Reardon and Harmon and the trustees and other creditors, the bill does charge:

''That the defendant hereinafter named, Lucian D. Taft, and his attorneys were cognizant of the foregoing facts and circumstances, and were informed and knew that the said Gilmore and Burke as such trustees, in order to protect from great loss and damage the estate and property held by them as such trustees, did procure, furnish and advance the money to take over the said certificate of levy and hold the same for the benefit of all creditors of the said Reardon and Harmon, and without prejudice to the rights or priorities of any of said creditors as against the others.''

It further appears from the record that on July 2, 1923, the appellant Taft caused his notes, secured by trust deed, to be entered in judgment by confession against Reardon and Harmon in the circuit court of Cook county and upon July 3, 1923, a transcript of said judgment was filed with the clerk of the circuit court of Champaign county and recorded, and on the same day an execution was issued out of the clerk's office of the circuit court of Champaign county on the Taft judgment against Reardon and Harmon, and appellant Taft, on July 3, 1923, paid to the sheriff

of Champaign county the sum of $8,471.34 to redeem the lands levied upon from the certificate of levy upon the Sheehan judgment, which had been assigned by Sheehan to Burke and Gilmore, and appellant Taft, through said sheriff, having advertised to sell said lands, in pursuance of the levy made, such sale to take place on December 3, 1923, this bill was filed and the injunction issued. Appellant Taft sought to advance the lien of his trust deed indebtedness and give him priority over the mortgages aggregating $38,200.

The Patrick Sheehan judgment having been entered June 1, 1920, redemption therefrom is governed by the sections of the act concerning judgments and decrees enacted and in force July 1, 1917, and the saving clause of the repealing act passed and in force July 1, 1921. Some point is made by appellees that in the saving clause of the repealing act of 1921 provision is made, in express terms, for the redemption of real estate from sales, but that there is no provision in the saving clause for the redemption of lands from certificates of levy, and that it follows that the attempt by appellants, in this case, to redeem the lands from the certificate of levy was without effect. The question raised by appellees has recently been passed upon by the Supreme Court of this state in *Ryan v. Allen*, 312 Ill. 250, since appellees' brief was prepared, and adversely to appellees' contention as to the construction of the saving clause of the act of 1921.

There is but one real substantial question in the case and that is, whether Burke and Gilmore, as trustees and as parties interested in the real estate paid the Sheehan judgment, with the intention that as a charge, lien or incumbrance, it should be wiped out and canceled, or whether the trustees, Burke and Gilmore, as individuals, paid the Sheehan debt and took an assignment of the certificate of levy, with the purpose of keeping the lien, by levy, alive and in force for some purpose of their own, other than the gen-

eral benefit of the creditors of Reardon and Harmon. This much is conceded by appellants and their brief states:

"They (the trustees) were at all times subsequent to January 25, 1922, persons interested in the real estate through the judgment defendants * * * and as such they had only to pay the redemption money to the sheriff of Champaign county, and the certificate of levy would thereupon have become null and void, and it would have been the duty of the sheriff to satisfy the judgment, * * * and at any time up to September 27, 1923, the trustees could have redeemed the property from the Taft levy, either with the trust funds or with money advanced by them, and had they taken such action instead of sleeping on their rights * * * it would not have been necessary for them to seek equitable relief on the very day when the property in question was to be sold by the sheriff of Champaign county."

The property of Reardon and Harmon, under the assignments and conveyances made to Burke and Gilmore, for the benefit of the creditors, became the subject of a trust which it is the special jurisdiction of a court of equity to guard and protect. *Howell v. Moores,* 127 Ill. 67; *Warner v. Mettler,* 260 Ill. 416, and this suit is brought directly under the equitable powers and jurisdiction of the court to protect the *cestui que trustents,* in their equitable interest in said lands. The contention of appellants that because the certificate of levy was not paid and canceled, but was assigned to Burke and Gilmore and on its face remained in force, some individual profit or benefit may be imputed to Burke and Gilmore, the trustees, is without basis and is not sanctioned by the law.

"A court of equity, independent of any agreement, would consider money advanced by a trustee, to purchase in an outstanding title, as an advance for the benefit of his *cestui que trust,* and not for his own use, giving him a lien on the property, until he was reim-

bursed the advancement.'' *King v. Cushman*, 41 Ill. 31; *Patterson v. Northern Trust Co.*, 286 Ill. 567.

''The maxim that equity regards as done that which ought to be done has been said to be equity's favorite maxim, and it has been said to be the foundation of all distinctively equitable property rights, estates and interests.'' 21 Corpus Juris 200; *Wyman v. Fort Dearborn Nat. Bank*, 181 Ill. 287.

These trustees could not buy in this outstanding certificate of levy and then set up title in themselves to defeat the interests of the *cestui que trustents*. *O'Halloran v. Fitzgerald*, 71 Ill. 53; *Moore v. Titman*, 44 Ill. 367; *Dennis v. McCagg*, 32 Ill. 429; *Jarrett v. Johnson*, 216 Ill. 212, and *Stemm v. Gavin*, 255 Ill. 486.

In *Stemm v. Gavin, supra*, it is held:

''It appears to us that the decree was right so far as it gave to the complainants the benefit of the transaction by the defendant. Agents, and those acting in a fiduciary capacity, are held to the strictest fairness and integrity, and in equity an agent is disabled from dealing in the matter of the agency on his own account and will be compelled to transfer the benefit of his contract to his principal. Any personal benefit obtained by an agent in violation of his duty will be held to inure to the benefit of the principal, and if the agent makes any profit to himself by virtue of his position he must account therefor as for a trust. (*Dennis v. McCagg*, 32 Ill. 429; *Davis v. Hamlin*, 108 Ill. 39; *Salsbury v. Ware*, 183 Ill. 505.) It was in accordance with this principle that the defendant was required to convey the property which he held as the result of the transaction, subject to the mortgage of $2,500 which he put upon the property to assist in paying Brittenham.''

Appellants cannot be permitted to impute a motive to Burke and Gilmore, as trustees, which the trustees under no circumstances could claim in their own behalf, without imputing to appellants the motive and intention to take advantage of a fraud. But the

authorities· are ample that the payment which the
trustees made to Patrick Sheehan of the amount due
him on his judgment was, in fact, a payment in satis-
faction of the judgment. The trustees paid the judg-
ment within the year within which the owner or those
interested in the lands were entitled to redeem. The
right which Burke and Gilmore had was simply to
be reimbursed for the advancements they had made
as trustees. *King v. Cushman,* 41 Ill. 31; *O'Halloran
v. Fitzgerald,* 71 Ill. 53; *Patterson v. Northern Trust
Co.,* 286 Ill. 564; citing *Stewart v. Fellows,* 128 Ill.
480; *Waterman v. Alden,* 144 Ill. 90 and 15 Corpus
Juris 105.

Even at law the purchase of the lesser estate by
the holder of the legal title, or the purchase of an
equitable interest by the· holders of the legal title,
operates as a merger; and in such case the lesser
estate, or equity, is at law merged in the legal title.
· However, circumstances may arise in equity where
the equitable interest may be preserved, and the strict
doctrine of merger not apply, where the broad equities
of the situation so require.

This distinction is pointed out in the case of *Belle-
ville Sav. Bank v. Reis,* 136 Ill. 242; *Weiner v. Heintz,*
17 Ill. 259.

In equity it is the intention of the purchaser which
is the determining factor as to whether or not a
merger results.

It was held in *Richardson v. Hockenhull,* 85 Ill.
125, quoting *Campbell v. Carter,* 14 Ill. 286: ''The
intention is the controlling consideration where it has
been made known, or can be inferred from the acts
and conduct of the party; and the court will look
into all the circumstances of the case to ascertain his
real intention. * * * If no intention has been
manifested, equity will consider the incumbrance as
subsisting or extinguished, as may be most conducive
to the interests of the party.'' And the same rule is

laid down in *Shaver v. Williams,* 87 Ill. 471; *Coryell v. Klehm,* 157 Ill. 483; *Blatchford v. Blanchard,* 160 Ill. 119; *Moffet v. Farwell,* 222 Ill. 548. In the last case it is held:

"Whether a merger results from a greater and less estate uniting in the same person depends upon what will best subserve the purpose of justice and the intention of the parties," and this is the general rule in all the courts. *Pugh v. Sample,* 123 La. 791, 49 So. 526, 39 L. R. A. (N. S.) 834, and note.

In *Forthman v. Deters,* 206 Ill. 171, the court held:

"Appellee being the holder of the mortgage—when the original vendors in the contract, or their grantee, the appellant, should execute to him a deed—there would unquestionably be a merger in appellee of the two estates, the legal estate of mortgagor and the equitable estate of mortgagee. It is well settled that, at law, when a greater or lesser, or a legal and equitable estate, coincide in the same person, the lesser, or the equitable estate, is immediately merged and annihilated. (15 Am. & Eng. Ency. of Law, — 1st ed. — p. 314.) It is true that the question, whether or not a merger takes place in equity, depends upon the intention of the parties and a variety of other circumstances. (15 Am. & Eng. Ency. of Law, — 1st ed. p. 314.) But, 'a merger will be prevented by equity only, however, for the purpose of promoting substantial justice; it will not prevent a merger, where such prevention would result in carrying a fraud or other unconscientious wrong into effect.' (15 Am. & Eng. Encyc. of Law, — 1st ed. — p. 315.) Pomeroy, in his work on Equity Jurisprudence (sec. 794), says: 'Whatever may be the circumstances, or between whatever parties, equity will never allow a merger to be prevented and a mortgage or other security to be kept alive, when this result would aid in carrying a fraud or other unconscientious wrong into effect, under the color of legal forms. Equity only interposes to prevent a merger, in order thereby to work substantial justice.' In this case, it would be an injustice to the original vendors in the contract, and to appellant,

their grantee, to permit appellee to hold the mortgage, as a subsisting incumbrance, and the note, as a subsisting indebtedness, after a deed had been executed to the appellee by Reka and Ferdinand Huckstead, and the appellant. Hence, upon the execution of the deed, required by the contract, to appellee, there would be a merger, which would protect the interest of appellant, and the vendors in the contract.''

It is of controlling importance in this case that Burke and Gilmore were acting as fiduciaries; they were trustees; they were acting for the benefit of all the creditors of Reardon and Harmon. They would not be permitted by their conduct to create or enforce any preferences, either in favor of themselves individually, or their own private interests, or the interests of any particular creditor. They were bound by the equities with which each particular creditor was clothed. The equities of all general creditors were equal. This applied even to the personal indebtedness from Reardon and Harmon to Gilmore and Burke personally; and applies likewise to the banks, respectively, of which Gilmore and Burke were officers, which held unsecured notes against Reardon and Harmon. Therefore, any claim by appellants that Gilmore and Burke, or either of them, were acting in their own interests, is not only without foundation in fact and contrary to the averments of the bill, but the rule governing fiduciaries prevents any such results.

Under the authorities, as cited, it must be held that the payment of the Sheehan judgment, made by the trustees, satisfied and canceled such judgment, regardless of the forms used to accomplish such results. Appellant Taft paid the sum of $8,471.34 to the sheriff of Champaign county to redeem the lands from the Sheehan certificate of levy, with a full knowledge that Burke and Gilmore, as trustees, had paid the amount for the benefit of all the creditors of Reardon and Harmon and with a knowledge of the law applicable to such transaction. There is an added reason why

appellant Taft, in this case, acquired no right in the Sheehan certificate of levy by payment of the amount to the sheriff to redeem. Appellant Taft could acquire no rights by his attempt to redeem that he could not acquire, either by voluntarily dealing with the trustees, or that equity and good conscience, under the law, would not permit them to forfeit and lose. It is an elementary principle of trusts that a purchaser, with notice of a trust, either express or implied, becomes himself a trustee of the property for the beneficiary and is bound in the same manner as the original trustee, even though he purchases for a valuable consideration. *Indiana, I. & I. R. Co. v. Swannell,* 157 Ill. 616; *First Nat. Bank v. Leach,* 207 Ill. 219. Even though Burke and Gilmore had accepted the funds deposited with the sheriff by appellant Taft, the complainants in the bill of complaint, appellees, would still be entitled to an injunction to prevent a sale, and appellant would be decreed to hold whatever advantage he had obtained in the property as a trustee for all of the creditors.

We are aware of the rule of diligence, contended for by appellant and as elucidated in *Betser v. Rankin,* 77 Ill. 289, and *McNary v. Southworth,* 58 Ill. 473, but no trust was involved in the cases cited and the parties were dealing at arm's length. The rules laid down in such cases are not applicable to this case.

Appellants have finally contended that the state of facts set forth in the bill do not warrant a court of chancery in taking jurisdiction of this cause and that there is no equity stated in the bill. From a very early period, assignments, for the payment of debts to creditors were valid at common law and as soon as the assignee accepted an assignment for that purpose he became a trustee for the creditors and they might compel the execution of the trust, in a court of chancery. "It will be observed that the statute in relation to voluntary assignments for the benefit of creditors * * * does not assume to create a right but

that it merely assumes to modify and regulate an existing right." *Union Trust Co. v. Trumbull*, 137 Ill. 158; *Weil v. Jaeger*, 174 Ill. 136; *Bradner Smith & Co. v. Williams*, 178 Ill. 426; *J. Walter Thompson Co. v. Whitehead*, 185 Ill. 462; *Hanchett v. Waterbury*, 115 Ill. 229; *Gibson v. Rees*, 50 Ill. 397, and Perry on Trusts, sec. 594; and in many of the cases it is held that the provisions of the Insolvency Act, *supra*, [Cahill's Ill. St. ch. 72] cannot, under the constitution, supersede a court of chancery, in its equitable powers.

The bill of complaint stated a ground for equitable interference and the order of the circuit court of Champaign county should be and is affirmed.

*Affirmed.*

On petition for rehearing, appellant urges a ground for reversal, which was not presented to the court below, as ground for dissolving the injunction, and has not been, heretofore, presented to this court in this case, and is not, therefore, considered. The opinion has been slightly modified, and should be further modified to show that this court does not hold that appellant consented or agreed to the assignments by Reardon and Harmon, or either of them, to Burke and Gilmore, if such inference can be drawn from the opinion, and with these slight modifications, on the case presented to this court, the former opinion is adhered to and the order of the circuit court of Champaign county affirmed.

*Affirmed.*