## M'Ginn *against* Shaeffer.

A contract for the purchase or sale of land with an infant is necessarily executory, binding on the adult, but liable to be affirmed or disaffirmed by the infant when he arrives at lawful age.  If possession be delivered under such contract to the purchaser, and the infant, when he arrives at full age, disaffirm it, the former shall be treated as a trustee for the infant in relation to the land, and may claim to be reimbursed all charges not received by the rents and profits.

When the acts of a trustee may admit of two constructions, one rightful and the other tortious, in respect to his *cestui que trust,* equity will choose the former and reject the latter.  Hence if he suffer the estate of the infant to be sold upon incumbrances which it was his duty to pay, and he afterwards become the purchaser, equity will consider him as having purchased in trust for the infant.

ERROR to the district court of *Alleghany* county.

Sophia Shaeffer and Sarah Shaeffer by their next friend John Fritchman against Bernard M'Ginn.    Ejectment for two lots in the Northern Liberties of Pittsburgh.

The plaintiffs are two of three children, and heirs of Peter Shaeffer deceased, who formerly resided in the Northern Liberties of Pittsburgh.    It was in evidence that he died some fourteen or fifteen years ago, on a journey, or while residing at Port au Prince ; he had possession, and claimed title to the lots in question, and when he left Pittsburgh the last time, he left his father-in-law, John Obey, Sen., and his mother-in-law in possession of his house.    His children, also, who had lost their mother, were left in the care of their grandparents, on the property.    After the news of his death arrived, the old people, knowing that the estate of their son-in-law was incumbered by sundry judgments, which would likely consume all his property and leave his children, who were very young, entirely penniless, entered into a parol contract with the defendant, and his father, Matthew M'Ginn ; by which they expected to save something for the children.    M'Ginn was to pay about 850 dollars, the supposed amount of Shaeffer's debts ; and to transfer a farm in Ohio to Shaeffer's children, or to Obey for them.    In pursuance of this agreement, the defendant went into possession of the property, and old Mr and Mrs Obey took their grandchildren to Ohio, and took possession of the farm, the title to which was in M'Ginn's father.

In eight months or a year afterwards, old Mr M'Ginn proceeded to Ohio, and, complaining that his son would give him no share of the property here, dispossessed the old people and their grandchildren of the farm; and they returned to Pittsburgh.    In the mean time, the estate of Peter Shaeffer was sold at sheriff's sale, and the

[M'Ginn v. Shaeffer.]

defendant obtained the title from the purchaser at sheriff's sale, and claimed the property as his own; and so the matter remained till this day.

Besides the title thus purchased by the defendant, he relied upon another and independent title to defeat the plaintiffs' recovery.

The court below (Grier, President) instructed the jury, "that if they believed the facts stated, equity would treat the defendant as a trustee *ex maleficio* for the infants, and not suffer him to take their property, thus gained, at a sacrifice.

"Whether the defendant is a trustee or not for the plaintiffs, or whether his title be good or bad, if it be true that he went into possession under them, by a contract with their guardians (for the grandparents would be considered as such, when they entered on the property of their infant grandchildren), he is estopped from setting up a title in a third person, or purchased by himself, since he received the possession. If a man makes an exchange of property with me, and received possession from me ; if the contract be annulled, he must return the possession. By entering under the contract he becomes *quasi* tenant ; he cannot say to the plaintiffs, I have now a better title than you, therefore I will not surrender the possession ; if he has a better title he must first surrender the possession to the person from whom he received it, and then bring his ejectment."

*Mahon* and *Williamson*, for plaintiff in error.
*M'Candless* and *Shaler*, for defendants in error.

The opinion of the Court was delivered by

SERGEANT, J.—The arguments of the counsel for the plaintiff in error, though ingenious, are by no means satisfactory in showing that the charge of the court below was wrong. Sitting as a court of equity, and embracing in one view all the features of this case, it is impossible not to perceive a series of omissions and of acts on the part of the defendant, producing the effects of a contrivance on his part to divest the plaintiffs of their property, and to secure it for himself at a manifest undervalue, whether the actual intent so to do can be proved or not. Such a proceeding, on the part of one who obtained the possession from infants, under a contract which he has in no respect complied with, but, on the contrary, has violated in every particular, presents a very unfavourable aspect before a court and jury, who regard not so much appearances as the essentials of probity and duty. It is not sufficient for a party who has been clothed with a fiduciary character to intrench himself in forms of law. Equity follows his character throughout and clothes him with it, notwithstanding his endeavours to shake it off in order that he may enjoy advantages derived from that character to the injury of others for whom he has acted.

The leading feature of the case is, that the defendant came into

[M'Ginn v. Shaeffer.]

the possession and management of these lots under a contract of purchase with the plaintiffs, or their representatives, they being infants. The right of infant heirs in real estate, in case of intestacy, can only be bound by a judicial sale. He who undertakes to deal with them knows that, from their incapacity to make a final contract, their agreements must necessarily be of an executory kind, binding on the adult, but liable to be either affirmed by the infants when they come of age, or to be then disaffirmed, at their will and pleasure. One entering under such a contract is not an intruder or trespasser; he enters under a legal right, such as it is, and takes it with all the rights and subject to all the contingencies to which it may ultimately subject him. He cannot annul it. He cannot assert its validity so far as it may be advantageous to him, and its validity so far as respects the infants. He should comply with it altogether, or, if he ever had the power, which it seems to me he had not, of disaffirming it, he should renounce it and place things in their original condition.

But what has been the conduct of the defendant in the present case after obtaining possession under the agreement? Had he paid off the incumbrances and left the children in possession of the Ohio farm; the consequence would have been that the title to the lots in question, and that of the Ohio farm would have remained as they were: he in possession of the lots under the parol contract, and they in possession of the Ohio farm under the same sort of title; but both executory until the children came of age. At that time, if they affirmed the contract, all could hold by virtue of the contract and possession; if they disaffirmed it, they could have surrendered the farm to him, and he would be bound to restore the lots on being refunded so much of his advances as remained due. For, in the latter event, the defendant might have justly asserted a right to be treated as a trustee for the infants in relation to the lots, and to be reimbursed all charges not received by the rents and profits. He could not be treated as a trespasser; the contract was not absolutely null and void, because the plaintiffs were infants; it was voidable at their option; and intervening acts fairly done and executed in pursuance of the contract would be supported in equity, so far, at any rate, as they were for the benefit and relief of the infants during their minority. This appears to me to be the situation in which the defendant placed himself by his contract: and it is no objection to say, that there was no equality or mutuality in such a bargain; because the defendant, in making it with infants, was bound to know the disability under which they laboured, and the nature of the engagements into which, by law, they were permitted to enter.

Instead, however, of paying off the incumbrances and saving the title of the infants, he avoids the payment altogether, suffers the lots to be sold under those incumbrances, and seven months afterwards acquires the title thus obtained from the creditors who had purchased at sheriff's sale, expending in the whole an amount less than he had

[M'Ginn v. Shaeffer.]

stipulated to raise, whilst the plaintiffs are ejected from the farm in Ohio, the only beneficial interest coming to them by reason of this contract: and it is concluded that the vendee at the sheriff's sale having clearly acquired a good title, the defendant holds that title in his own individual right, free and discharged from all obligations and responsibilities which may have arisen out of his previous relation to the infants. I am of opinion that though his title under that purchase is good and cannot be divested, yet, under the circumstances of the case, he holds that title as trustee for the plaintiffs: that the defendant could not purchase in his own right and hold adversely to the plaintiffs, but the moment he acquired the title, if it was beneficial for the plaintiffs so to do, they had a right to consider him as holding as their trustee. A trustee cannot buy the property of his *cestui que trust* directly or indirectly. He cannot be both buyer and seller at the same time. The duties of the two characters are incompatible. The temptation to do wrong is such, that the law will not permit a functionary to be exposed to it, but interposes at once an insuperable barrier by an inflexible prohibition. Now it seems admitted here, that if the defendant had procured the sale by the sheriff for the purpose of obtaining the title, he must be treated as holding in the capacity of trustee. But I see no difference, in justice and equity, whether a man directly procures a thing to be done in derogation of his duty; or, when it is his duty and in his power to prevent it, he stands by and suffers it to be done, and then endeavours to avail himself of the benefits of it, to the prejudice of those for whom he was bound to act. It is *lata culpa* and *crassa negligentia* combined, and equivalent, in contemplation of law, to fraud. It was the duty and the express engagement of the defendant to discharge the incumbrances, and prevent the divesting of the title from the Shaeffers. This was the main object of the arrangement; one in which they had a deep interest, as well because the quiet enjoyment of the Ohio farm might depend upon it, as because, in law, if the lots were preserved, they had a right, at a future day, to resume these lots. But instead of preserving the title for them, he suffers it to be sold and to be divested. It is against equity that he should, immediately after, acquire this title and set it up adversely to the plaintiffs. Whatever his own view may have been, such design is against good conscience. His duty being to purchase in for the benefit of the infants, the law will consider him as fulfilling his duty, and clothe his acts in that purchase rather with a rightful character than treat him as a wrongdoer.

There is but one recognized path for a trustee to walk in, and that is, that all his views and conduct be directed to a faithful discharge of his duty as such; and where his acts may admit of two constructions, one rightful, the other tortious, in respect to his *cestui que trust*, equity will choose the former and reject the latter. After this sheriff's sale, it was still the duty of the defendant to purchase in the lots for the infants, if it could be done on the terms originally stipulated; it

appears it could be done and was done ; and it ought to be consi-
dered as done in the performance of that duty.    The relation be-
tween the parties still subsisted ; the formal change of the title by
the sheriff's sale still left the defendant at liberty to execute his
agreement and produce the result contemplated.    It may be consi-
dered as only a more circuitous mode of attaining the same end ; the
defendant acquiring a title under a judgment sale, but holding that
title in the same manner as he held the former—liable to all the
rights of the infants to reclaim it on attaining their majority.

Judgment affirmed.