## Cornelian P. Russell

### v.

## Joseph A. Peyton et al.

1. EXPRESS TRUSTS—DEFINITION.—Express trusts are those which are created in express terms in the deed or will, and as such, are to be distinguished from implied trusts, which, without being expressed, are deducible from the nature of the transaction as matters of interest, or superinduced upon the transaction by operation of law, as matters of equity, independently of the particular intention of the parties.

2. STATUTE OF LIMITATIONS.—As between a trustee and *cestui que trust*, in the case of an express trust, the Statute of Limitations has no application, and no lapse of time constitutes a bar. The relation of privity between the parties is such that the possession of one is the possession of the other, and there can be no adverse claim or possession during the continuance of the relation.

3. REPUDIATION BY TRUSTEE—EFFECT.—The trustee, by clear and unequivocal acts or words, may repudiate the trust, and claim thenceforth to hold the estate as his own, not subject to any trust; but such repudiation must be brought to the notice of the *cestui que trust* in such a manner that he will be called upon to assert his equitable rights; and in such case the statute will begin to run from the time of such knowledge.

4. DEATH OF TRUSTEE—DESCENT OF ESTATE TO HEIRS.—The ancestor of defendants in error received the lands in question, charged with an express trust in relation thereto. The defendants, as his heirs, took the lands by descent charged with said trust. In the absence of any evidence tending to

give it a different effect, the bringing by the heirs of a suit in ejectment against a third party, for the recovery of the lands, was an act in execution rather than in repudiation of the trust. It was their duty, as trustees, to obtain and hold possession of the property as against adverse claimants.

5. PURCHASING IN ADVERSE TITLE BY TRUSTEE.—The defendants claimed that an adverse title having matured in the hands of a third party, and they having obtained conveyance of such title to themselves, can now set up such title against the claim of the *cestui que trust*. This they will not be allowed to do. The property given by them in exchange for the adverse title was a part of the trust property, and, as between them and the *cestui que trust*, belonged to the latter. Again, they will be presumed, in obtaining such title, to be acting in behalf and for the interest of the *cestui que trust*. A trustee cannot purchase an outstanding interest in the trust, and hold it for his own benefit.

6. LACHES OF CESTUI QUE TRUST.—As between the trustee and *cestui que trust*, the mere failure of the latter to assert his rights by any affirmative act, will not bar such rights, however long it may continue.

7. PAYMENT OF TAXES.—By the terms of the declaration of trust, it became the duty of the trustee to pay the taxes imposed upon the lands, and laches cannot be imputed to the *cestui que trust* in suffering the land to be sold for taxes.

8. ESTOPPEL OF TRUSTEE.—The defendants sought to defend by showing a variance between the allegations and proof as to the time the declaration of trust was executed. In this they are estopped by the recitals in the declaration. They will not be permitted to show that in fact it was executed at a time other than that on which it bore date.

9. INTERLINEATIONS—OLD DOCUMENT.—This court, from an examination of the original instrument, are of opinion, from its appearance and the nature of the interlineation, that the words interlined were written at the time it was drafted; and this, in connection with its antiquity, justified the court below in admitting it as evidence.

ERROR to the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding. Opinion filed November 5, 1879.

Messrs. COOK & UPTON, for plaintiff in error; that the Statute of Limitations has no application, and is no bar, cited Perry on Trusts, 491; Tiffany and Bullard on Trusts, 715; Hill on Trustees, *264; Caster v. Murray, 5 Johns. Ch. 522; Decouche v. Savetier, 3 Johns. Ch. 190; Farnhams v. Brooks, 9 Pick. 213; Seymour v. Freer, 8 Wall. 202.

Defendants cannot hold the newly acquired title adversely to the *cestui que trust:* Perry on Trusts, 521.

As to proof of signature of subscribing witness: Hartford Ins. Co. v. Gray, 80 Ill. 28.

Russell v. Peyton.

As to interlineation: Beaman's Adm'r v. Russell, 20 Vt. 205.

The rights of the heir are the same as his ancestor: Perry on Trusts, § 345.

The adverse title purchased by the trustee enures to the benefit of the *cestui que trust:* O'Halloran v. Fitzgerald, 71 Ill. 53; King v. Cushman, 41 Ill. 31; Moore v. Titman, 44 Ill. 367; Dennis v. McCagg, 32 Ill. 429.

Complainant is not estopped by the fact that his mother, the *cestui que trust* named in the declaration, commenced suit for dower in the premises, such suit having been abandoned before a decree was entered therein: Flower v. Elwood, 66 Ill. 438; Thomas v. Bowman, 29 Ill. 426.

Messrs. G. & W. Garnett, for defendants in error; that the Statute of Limitations having cut off the title of the Peytons, the trust was extinguished, and the Peyton heirs were free to deal with the land as strangers, cited Thomas v. Chicago, 55 Ill. 403; Watson v. Sherman, 84 Ill. 263.

When the trust ceases the trustee may become the purchaser: Munn v. Burges, 70 Ill. 604; Mortman v. Skinner, 1 Beasley (N. J.) 371; Boehler v. McBride, 48 Mo. 507; Bush v. Sherman, 80 Ill. 160.

Appellant is barred by his laches: Rogers v. Simmons, 55 Ill. 76; Williams v. Rhodes, 81 Ill. 571.

The filing of a petition for dower by the mother of appellant estops him from claiming the land: Bigelow on Estoppel, 518.

Bailey, P. J. Cornelian P. Russell, the plaintiff in error, exhibited in the court below his bill in chancery against the defendants in error, as heirs-at-law of one Francis Peyton, deceased, to compel the conveyance from them to him of the west half of the southwest quarter of section twenty-nine, township thirty-seven, range fourteen, in Cook county, Illinois. The bill is based upon an instrument in the nature of a declaration of trust, bearing date June 10, 1837, executed by said Francis Peyton to Cornelia Russell, the complainant's mother. By said instrument said Peyton, after reciting that John B. F.

Russell, the husband of said Cornelia Russell, had conveyed to him, the said Peyton, for the use of said Russell and wife, a large amount of real estate and other property, described in said instrument, including the land in controversy, covenanted and agreed to take charge of and manage said property for the use of said Cornelia Russell to the best advantage, subject to the exercise of a sound and reasonable discretion on the part of said Peyton; and subject also to any and all sums of money which the said Peyton might be required to pay for and on account of the security of the title to said property, to any and all persons having claims thereto; and to rent, lease, sell, or otherwise dispose of said property, for the benefit of said Cornelia Russell, and to account for and pay over all such sums of money as might at any time come to his hands on account of said estate.

It was also covenanted on the part of said Cornelia Russell that said Peyton should be entitled to all sums of money he might at any time expend in obtaining the title to said property, or in the necessary repair or preservation thereof; and also, if on settlement of accounts between said Peyton and said John B. F. Russell, said Russell should be found in arrears, and indebted to said Peyton, he, the said Peyton, should have a right to retain the amount thereof out of any moneys which might come to his hands on account of said estate. It was further provided that the rents of certain stores included in the trust property, should be pledged for the payment of the sum of $3,300, which said Peyton and another had already paid on account of said property.

It appears from the evidence that Peyton died intestate about 1850, without having conveyed said land, and that such title as was then vested in him descended to the defendants, as his heirs-at-law. Said Russell died in 1861, leaving the complainant his only child and heir-at-law, and on the 16th day of February, 1874, Cornelia Russell executed a deed conveying her equitable estate in said land to the complainant.

It was shown in defense that said land was sold for taxes in 1842, and a tax deed therefor executed to the purchaser in 1844, and that after several mesne conveyances, the title thus

acquired was conveyed to one John Forsythe, by deed dated February 14, 1868.    Also that said land was sold for taxes in 1863, said Forsythe being the purchaser, and that a tax deed was executed to him under said sale, August 28, 1865.    The premises were vacant and unoccupied until October, 1865, when one Quade took possession thereof as tenant of Forsythe, and continued to hold possession as tenant, until July 14, 1868, when Forsythe entered into a contract for the conveyance of said land to him, which conveyance was made February 12, 1872.    Quade continued in possession under said contract and deed up to the commencement of this suit, June 9, 1875.    It was admitted that successive grantees holding the title under the first tax deed, paid the taxes on said land, while the same was vacant and unoccupied, from 1852 to 1861, both inclusive, a period of ten years; and that Forsythe and Quade paid the taxes while Quade was in possession, as aforesaid, from 1865 to 1873, inclusive, a period of nine years.

In October, 1869, the defendants commenced a suit in ejectment against said Quade for the recovery of said land, which suit resulted in a compromise between said parties, in pursuance of which the defendants conveyed to Quade the south half, and Quade conveyed to the defendants the north half of said tract, said conveyances being dated March 6, 1874. Quade not being a party to this suit, the counsel for complainant, in his argument, expressly disclaims the right to recover the tract so conveyed to him.    On the hearing in the court below, the bill was dismissed for want of equity, and a decree rendered against the complainant for costs.

The defenses chiefly relied upon by the defendants, are the Statute of Limitations, laches on the part of Cornelia Russell, complainant's grantor, and the purchase by defendants of an outstanding superior title.    It is claimed that the first of these defenses arises from the payment of taxes for seven successive years, under claim and color of title, by the several grantees under the first tax deed while the land was vacant and unoccupied; and also from the payment of taxes for a like period under claim and color of title, by the grantees under the second tax deed, while in actual possession of the land; and accordingly

both sections eight and nine of chapter twenty-four of the Revised Statutes of 1845, are relied upon and pleaded in the answer.

It cannot be denied that, under the agreement of June 10, 1837, said Peyton became the trustee of an express trust, and it is equally clear that the defendants, at his death, took said lands by descent, charged with said trust. Express trusts are defined to be trusts which are created in express terms in the deed, writing or will, and as such are contradistinguished from implied trusts, which, without being expressed, are deducible from the nature of the transaction, as matters of interest, or superinduced upon the transaction by operation of law, as matters of equity, independently of the particular intention of the parties. The trust upon which the property was held by Peyton, and upon which it descended to his heirs, was expressly declared, and the land, in the hands of either, must be held to be subject to all the incidents ordinarily appertaining to that class of trusts.

It is true, some of the powers and duties of the trustee defined in the declaration of trust may be regarded as matters of discretion confided personally to the original trustee, and, for that reason, incapable of passing by descent to his heirs. No question of the exercise of such powers, however, arises in the present case, and their character as matters of personal discretion or otherwise need not be considered. The equitable duties sought to be enforced are all of them clearly such as passed to the defendants with the estate, either among those expressly declared, or as necessarily incidental to a trust of this character. Those duties relate merely to the possession, protection and preservation of the estate. Among the ordinary duties of the trustee of an active trust, however such trust may arise, is included that of securing the possession of the trust property, and protecting and preserving the same from loss and injury. 1 Perry on Trusts, §§ 344, 448. This, at least, the defendants were bound to do.

The rule is well settled and of general application, that as between trustee and *cestui que trust*, in the case of an express trust, the Statute of Limitations has no application, and no

Russell v. Peyton.

length of time is a bar. The relations of privity between the parties are such that the possession of one is the possession of the other, and there can be no adverse claim or possession during the continuance of the relation. Accordingly, where one has entered into possession as trustee, he cannot be permitted to set up a possession or title in himself adverse to the *cestui que trust.* It is his duty, if he intends to claim the estate, to resign the trust and deliver over the possession which he received as trustee. If, however, he repudiates the trust, by clear and unequivocal acts or words, and claims thenceforth to hold the estate as his own, not subject to any trust, and such repudiation and claim are brought to the notice or knowledge of the *cestui que trust,* in such manner that he is called upon to assert his equitable rights, the statute will begin to run from the time such knowledge is brought home to the *cestui que trust.* But to enable him, without giving up the possession, to turn it into an adverse holding, the evidence must be clear and unmistakable, and such claim must be brought home to the *cestui que trust* beyond any question or doubt. 2 Perry on Trusts, §§ 863, 864; Hill on Trustees, 264; Tif. & Bul. on Trusts, 715; Hancock v. Harper, 86 Ill. 445; Walden v. Karr, 88 Ill. 49.

Applying these principles to the present case, it is clear that, as between the complainant and the defendants, the Statute of Limitations is no bar. There is no pretense of any express repudiation or disavowal of the trust by the defendants prior to the commencement of this suit, either by words or acts, nor are any facts proved which can be held to be tantamount to such disavowal. Previous to October, 1865, the premises were vacant and unoccupied, and the first act of the defendants of any character having any relation whatever thereto, so far as the evidence shows, was the commencement of a suit in ejectment on the 21st day of October, 1869, to recover possession. Even if the commencement of such suit could be regarded as a repudiation of the trust, the present suit was commenced June 9, 1875, which was less than seven years thereafter, and there was no proof of the payment of taxes by any one for seven successive years after the institution of the ejectment suit.

But it is manifest that the commencement of the ejectment suit was, at least in the absence of evidence tending to give it a different effect, an act in execution rather than repudiation or disavowal of the trust. It was the duty of the defendants, as trustees, to obtain and hold possession of the property as against adverse claimants, and it will be presumed, in the absence of proof to the contrary, that in bringing said suit they were performing that duty. The presumption is that parties charged with a trust perform their duty, until the contrary appears; and where an act is susceptible of two opposite constructions, one consistent with innocence and fidelity to duty, and the other the reverse, equity will choose the former and reject the latter. Munn et al v. Burges et al. 70 Ill. 604; McGunn v. Schaeffer, 7 Watts, 412.

But an adverse title having matured by limitation in the hands of a third party, and the defendants having obtained a conveyence of such title to themselves, they now claim the right to set the same up as against their *cestui que trust*, and to avail themselves of the Statute of Limitations in support of such title in the same manner and to the same extent their grantor might have done. That they cannot do so is obvious, from the following considerations:

The defendants obtained the conveyance from Quade of the forty acres they now hold, in consideration of the conveyance from them to him of the forty acres constituting the other half of the tract in question. Nothing else was paid. It is manifest that the entire consideration of the conveyance to the defendants was, as between them and the complainant, the property of the latter. At the time of the compromise of the ejectment suit, the only title of the defendants to any portion of the tract was that derived by descent from the original trustee. Nothing had occurred since the death of Peyton which could have had the effect of merging the equitable estate in the legal title. As we have seen, mere lapse of time could not have done it, and the record is barren of proof of any transactions between the parties having any tendency to accomplish that result. The defendants' title was in no way superior to that derived from their ancestor, and was the mere naked legal title, the

entire beneficial estate being in Cornelia Russell, and afterward in her grantee, the complainant.   The land in question, then, having been purchased by defendants and paid for with that which, as to them, was the property of the complainant, they cannot be permitted, as against him, to hold the estate thus acquired.

Furthermore, the defendants must be presumed, at least until the contrary is shown, to have intended, not only in bringing the ejectment suit, but also in obtaining by compromise a conveyance to themselves of a moiety of the land in dispute, to act on behalf and in the interest of their *cestui que trust*.   It was their duty, as trustees, to commence and prosecute the ejectment suit, and to obtain through its instrumentality the largest results which a diligent and prudent prosecution of such suit could achieve.   It will be presumed that they intended to perform that duty, and having done it, the results obtained belong to their *cestui que trust*, and not to them.

But even had they intended to prosecute the ejectment suit for their own advantage, and obtain for their own use whatever might result therefrom, they would have been precluded, upon well settled and familiar principles of equity, from so doing.   A trustee, so long as the trust continues, cannot purchase an outstanding interest in the trust property for his own benefit and hold the same adversely to the *cestui que trust*. In Thorp et al v. McCullum et al. 1 Gilm. 614, the rule is stated as follows : "The general principle of equity is, that trustees and others sustaining a fiduciary and confidential relation cannot deal on their own account with the thing or the persons falling within the trust or the relationship."   The court, in discussing the reasons for the rule, uses the following language : " The temptation of self-interest is too powerful and insinuating to be trusted.   Man cannot serve two masters; he will forsake the one and cleave to the other.   Between two conflicting interests, it is easy to forsee, and all experience has shown, whose interest will be neglected and sacrificed.   The temptation to neglect the interest of those thus confided must be removed by taking away the right to hold, however fair the purchase or full the consideration paid; for it would be impossible

in many cases to ferret out the secret knowledge of facts and advantages of the purchaser, known to the trustee, or others acting in the like character. The best and only safe antidote is in the extraction of the sting. By denying the right to hold, the temptation and power to do wrong is destroyed." See, also, Van Epps v. Van Epps, 9 Paige, 237; Slade v. Van Vechten, 11 Id. 21; Jewett v. Miller, 10 N. Y. 402; King v. Cushman et al. 41 Ill. 31; O'Halloran v. Fitzgerald, 71 Ill. 53. In the two cases last cited, it is held that where the trustee buys in an outstanding interest with his own money, the purchase will be held to be for the benefit of the usee, reserving to the trustee merely a lien on the property, to secure him for the money advanced, in making the purchase.

Such being the well settled principles of equity, it is impossible to find any principle upon which the defendants can derive any advantage from the conveyance to them from Quade. They are not even entitled to a lien for the purchase money, as they expended nothing in making the purchase. If the title in the hands of Quade was perfected and matured by force of the Statute of Limitations, the benefit of the statute and of the title thus perfected accrues to the complainant, and not to the defendants.

As to the remaining defense, we are unable to find in the record any evidence of laches on the part of the complainant or his grantor, which should be held to bar his equity in the land in controversy. The only laches charged, consist of failure on the part of Cornelia Russell to pay the taxes, her suffering the land to be twice sold for taxes and tax titles to mature thereon, and her neglect by any affirmative act to assert her equitable title to said land. As between trustee and *cestui que trust*, in cases of express trust, a mere failure by the latter to assert his rights by any affirmative act, will not bar such rights, however long such failure may be continued. His rights are determined and defined by the writing by which the trust is created and declared, and as between the parties to such writing no additional assertion thereof can be essential to their continued validity.

As to the failure to pay taxes, it is sufficient to say that by

the terms of the declaration of trust, the duty of paying them was clearly imposed upon the trustee, and not upon Mrs. Russell. He undertook to take charge of and manage the property for her use, and ample provision was made for the funds necessary for obtaining, securing and preserving the title thereto. Whatever negligence there may have been in the matter of paying taxes and suffering tax titles to mature against the property, lies at the door of Peyton or of the defendants, his successors in trust. A failure on their part to perform the duties of the trust cannot be by them imputed to her as laches. The defendants assume a position which is, to say the least, extraordinary, in claiming an extinguishment in their own favor of Mrs. Russell's rights through the operation of their own neglect to perform their duties as trustees.

Apart from the merits of the case, the defendants seek to sustain the decree by pointing out what is deemed to be a variance between the averments of the bill and the proofs introduced at the hearing in relation to the date of the deed by which the land in question was conveyed from John B. F. Russell to Peyton. The bill describes said deed as being dated June 3, 1837, while the proof shows that it was actually dated April 3, 1837. This proof might be sufficient to establish a material variance were it not that the defendants are estopped by the recitals of the declaration of trust to show that the date of the deed was other than June 3d. The declaration of trust was executed under the seal of Peyton, the trustee, and recites a conveyance of said land from said Russell to him on the third day of June, 1837. This recital is conclusive upon the defendants, and they are estopped from insisting that the deed was actually different from what it is there declared to be.

The defendants further allege, by way of cross-error, that the proof of the execution of the declaration of trust was insufficient to warrant its admission in evidence, and that the court below erred in admitting it. There appears appended to that instrument the signature of a subscribing witness, and the complainant sought to prove its execution by showing the death of such witness and proving the genuineness both of his signature and that of Peyton. The signatures were sufficiently proved, but

the evidence of the death of the subscribing witness consisted of the testimony of a witness not a relative of the subscribing witness, who testified to his decease from information derived from members of his family and from general report.   We do not deem it necessary to determine whether this evidence was sufficient or not.   Should we reach the conclusion that the execution of the instrument was not sufficiently proved, it would not be the proper practice to now virtually exclude it from the record for that reason and decide the case as though it had not been received in evidence.   It was admitted and considered by the court below, and it would be erroneous for us to disregard it and affirm the decree for want of proof of the trust set up in the bill.   As the cause must be remanded, the complainant may be able on another hearing to make such proof as will free the case from all question in this respect.

A further objection to the admission in evidence of said declaration of trust was made on the ground of an interlineation therein.   We have caused the original instrument to be submitted to us for our inspection, and on examining it we are disposed to think that the handwriting and color of the ink in the interlineation correspond with other parts of the instrument.   We further think that the appearance of the instrument as well as the nature of the interlineation are such as to indicate that the words interlined were probably written at the time the draft of the instrument was prepared, and before execution.   These facts, taken in connection with the antiquity of the instrument, it being now over forty-two years old, in our opinion justified the court in overruling the objection.

The decree is contrary to the rights of the parties as established by the evidence, and it is accordingly reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Decree reversed.