Sarah Pinneo *et al.*

*v.*

Francis Goodspeed, Exr. *et al.*

*Filed at Ottawa November 10, 1881—Modified, and re-filed Sept. 27, 1882.*

1. Evidence—*attacking judicial proceedings collaterally—relevancy.* On bill by a husband to compel his divorced wife to restore a conveyance of her land to him, which she had surreptitiously taken from him, and cross-bill by her to set aside such conveyance, on the ground it was procured through the fraud, imposition and treachery of her solicitor in the divorce suit against her, acting in collusion with her husband, testimony tending to show the propriety of the decree of divorce is irrelevant and improper.

2. Fraud—*as between husband and wife—procuring conveyance of wife's land by fraud—effect of adultery on the part of the wife.* A married woman and her brother, having acquired certain lands by descent, each a moiety thereof, partitioned the same by mutual conveyances, the husband by her consent taking a conveyance from her brother for one-half of a three hundred acre farm, leaving her the owner of the legal title to an undivided half thereof, and the equitable owner of the other half. Pending a suit against her by the husband for a divorce, he obtained her conveyance of the premises through fraud, and the imposition and treachery of her solicitor acting in collusion with him, which deed the wife afterward surreptitiously obtained, and refused to surrender: *Held,* that a bill by the husband for a restoration of the deed was properly dismissed, and the wife properly restored to her title on cross-bill to set aside her conveyance to her husband, and have the title to the land confirmed in her. The fact that the wife may have com-

mitted adultery did not deprive her of her property rights, or the right to protection against the fraudulent action of her husband.

3.  ADMINISTRATION OF ESTATES—*application of rents and profits arising from lands belonging, in equity, to a third person.* Where a deed from a wife to her husband has been set aside as having been obtained by fraud, and the title to the land found to have been, in equity, all the time in the wife, subject to a mortgage given by her and her husband, and his rights growing out of the marriage relation, during his lifetime, his executors will have no authority to apply the rents and profits of such land accruing after his death to their own use, or in payment of the general creditors of the estate. After the death of the husband the rents and profits belonged to the wife, subject to the rights of the holder of the mortgage to have them applied on the mortgage.

4.  SAME—*power of executor with condition attached—as to payment of debt under direction in will.* In such a state of case, where the husband, by his will, directed the payment of the mortgage debt out of the income to be derived from the land, it was held to be the duty of his executors to pay the debt out of assets of the estate, whether it was allowed or not by the county court. The direction by the testator to pay the debt was a recognition of the justness of the claim, and if the direction to pay was coupled with a condition that could not be legally performed, the condition should be rejected, leaving the direction to pay absolute.

5.  SAME—*debt of testator created in purchase of outstanding dower right in wife's land—mortgage by husband and wife on her land to secure the same—primary liability of husband's estate.* Where a husband has a freehold estate as tenant by the curtesy initiate in his wife's land, subject to a dower interest in the widow of the wife's deceased father, and to extinguish which dower interest he gives his note to the dowress, secured by a mortgage from him and his wife on the same land, the mortgage debt will be that of the husband, and not that of the wife, and his estate is the primary fund for its payment, although his life estate in the land may have been terminated by his death, and the wife's estate in the land, as between her and his legal representatives, will be treated as only secondarily liable.

6.  MORTGAGES—*application of rents and profits—party treated as mortgagee in possession.* Where a husband and wife give a mortgage to secure a debt of the former, upon her land, and the husband dies, whereby his life estate in the land is terminated, the rents and profits accruing therefrom after his death will belong to the wife, until the mortgagee interposes and appropriates the same; and where the executor of the deceased husband procures an assignment of such mortgage for her use and benefit, all rents and profits received by her afterward should be applied from year to year upon the mortgage debt, less the taxes and necessary repairs, as with a mortgagee in possession.

7.  PARTIES—*on bill for account of rents and profits by mortgagor against assignee of mortgagee.* After the giving of a mortgage by a hus-

band and wife upon the land of the latter for the debt of the former, he obtained a divorce from the wife, and again married. After his death, his widow, who was also one of his executors, and in possession of the land, procured an assignment of the mortgage debt to one in trust, for her use: *Held*, that the widow, both as executrix and mortgagee in possession, and her trustee, the legal holder of the mortgage debt, were not only proper but necessary parties to a bill by the former wife and owner of the land for an account of the rents and profits of the land since the death of the husband, and that it was error to dismiss a supplemental bill making such persons parties, when the change in interest occurred after the filing of the original bill.

8. PLEADING—*striking out irrelevant and impertinent matter.* The object of a pleading of any kind is to state the facts upon which the rights of the parties depend, and nothing more. When a bill in chancery contains irrelevant and impertinent matter, such as mere legal arguments and reasons occurring to counsel why this or that step should or should not be taken, and the violation of the rule of pleading is palpable and gross, the court itself will direct that the irrelevant and impertinent matter be eliminated.

9. PLEADING AND EVIDENCE—*relief in chancery must be warranted by the pleadings.* It is a familiar rule of chancery practice that no relief will be decreed which is not warranted by the general scope of the pleadings.

10. A husband obtained a decree of divorce against his wife, in which proceeding she was allowed $500 per annum alimony. In that proceeding the husband, through fraud and imposition, and the treachery of the solicitor of the wife in the suit, who was acting in collusion and concert with the husband, procured from her a conveyance of her farm of three hundred acres of land. On discovering the fraud she filed her bill to set aside the agreement and conveyance by which her husband acquired title to her lands, but in it did not seek to impeach the decree of divorce and alimony. It was objected that it was inequitable to set aside the conveyance and permit the decree for alimony to stand: *Held*, that in the absence of anything in any of the pleadings seeking such relief, the court was justified in refusing to disturb the decree for alimony. The seeking of her rights in respect to her property did not affect at all the binding force of the decree for divorce and alimony.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. BARBER & RANDALL, for the appellants:

Knox in equity holds subject to all the equities of the mortgage. *Olds* v. *Cummings*, 31 Ill. 188.

Knox has no interest in the case, and can not recover in his own name in a court of equity, which will not recognize

the statute, to do injustice. Such right did not exist at the common law. *Herrick* v. *Cameron,* 10 Johns. 224; *Gunn* v. *Cantine,* 10 id. 387; *Shear* v. *Mallory,* 13 id. 496; Chitty's Pleading, 3.

In equity the complainant must be a person having an interest in the subject matter. Barbour on Parties, 101; Story's Equity Pleading, secs. 23, 262, 178, 227, 514; *Conger* v. *Halliday,* 11 Paige, 314; Daniell's Chancery Practice, 314, 321, 322; *Winkleman* v. *Kiser,* 27 Ill. 22; *Dix* v. *Mercantile Ins. Co.* 22 id. 276; *Jones* v. *Goodrich,* 17 id. 380.

So far has this principle of the necessity of interest been carried, that it has been decided that making a person party who appears to have no interest, is bad on demurrer. *Roby* v. *Cossitt,* 78 Ill. 644.

Another point was quite as earnestly made, and is now insisted upon: that a party acting in a fiduciary capacity can not deal with the thing to his own profit. *Devon* v. *Fanning,* 2 Johns. Ch. 255; *Phelps* v. *Reeder,* 39 Ill. 176; *Railroad Co.* v. *F. L. and T. Co.* 49 id. 347; *Railroad Co.* v. *Kelley,* 77 id. 432; *Ogden* v. *Larrabee,* 57 id. 402; *Nelson* v. *Hayner,* 66 id. 493; 4 Kent, 438; *Michaud* v. *Girod,* 4 How. 553.

If Mrs. Fargo accepts under her husband's will, she is bound in equity to perform its conditions. If she is, then when Goodspeed paid her money to the mortgagee he satisfied the mortgage, and a release should have been taken,— not an assignment. But she was not only bound to pay this mortgage by the will, but by the law, as executrix. It was O. T. Fargo's debt. He undertook to pay it in consideration of having the title and profits of the land. The Supreme Court has decided he held the title in trust for appellant. But he received rents and profits sufficient to pay the mortgage several times over, and the executor and executrix have, since his death, received rents sufficient to satisfy the mortgage, and it was their duty to have paid it off. The decree is, that the receiver pay over the moneys received by him for

rents, etc., to Augustus F. Knox, etc. Yet Knox is not a party to this suit, and the supplemental cross-bill was for the express purpose of making him a party and adjusting his equities. *Spear* v. *Campbell*, 4 Scam. 404; *Prentice* v. *Kimball*, 19 Ill. 320.

Those rents belong to the owner of the land, and not to the executors. *Kohler* v. *Knapp*, 1 Bradf. (N. Y.) 241; *Stinson* v. *Stinson*, 38 Me. 693; *Foltz* v. *Prouse*, 17 Ill. 487; *Haslage* v. *Krugh*, 25 Pa. St. 97.

Messrs. Garnsey & Knox, for the appellees:

The agreement of October 25, 1870, will be enforced in a court of equity, though made between parties who at the time were husband and wife. The only question is, was it, under the circumstances, fair and equitable? Bishop's Law of Married Women, secs. 719, 604, 712; Story's Eq. Jur. secs. 1368, 1372; *Livingston* v. *Livingston*, 2 Johns. Ch. 537; *Todd* v. *Wickliffe*, 18 B. Mon. 866; *Dale* v. *Lincoln*, 62 Ill. 26; *Hunt* v. *Johnson*, 44 N. Y. 31.

The quitclaim deed of January 23, 1868, from E. G. Haaf and Sarah Ann Haaf (designated as a partition deed) to Fargo, created no trust estate in Fargo for the use of his wife, within any definition of a trust estate. It was not express, or implied, or a resulting trust, or a constructive one. Perry on Trusts, secs. 24, 25, 26, 27, and secs. 168, 140; *Williams* v. *Brown*, 14 Ill. 200; *Holmes* v. *Holmes*, 44 id. 168; *Bib* v. *Smith*, 12 Heisk. (Tenn.) 728; *Lux* v. *Hoff*, 47 Ill. 427; *Bragg* v. *Geddis et al.* 93 id. 58; *Moss* v. *Moss*, 95 id. 451; *Byres* v. *Danley*, 27 Ark. 77; *Hays* v. *Quay*, 68 Pa. St. 263; Perry on Trusts, sec. 140; *Osborn* v. *Osborn*, 29 Stewart, (N. J. Eq.) 387; *Hunt* v. *Moore*, 6 Cush. 2.

The judgment of a court, rendered where it has jurisdiction, can not be attacked in a collateral proceeding. *Clark* v. *Thompson*, 47 Ill. 25; *Conover* v. *Musgrave*, 68 id. 60; *Wemberly* v. *Hurst*, 33 id. 172.

If this property, or any portion of it, should be adjudged to belong to Sarah, still, Fargo, as tenant by the curtesy initiate, had a right to receive the rents and profits while they were husband and wife. The act of 1861 did not deprive him of this estate, and such rents were received by him with her full knowledge and consent. She nowhere alleges, or attempts to prove, that they were not so received with her full consent. *Carpenter* v. *Davis*, 72 Ill. 19; *Kohn* v. *Wood*, 82 id. 220.

The executors would not be responsible for any rents received by Fargo in his lifetime, for no such rents came into their hands, in fact. As to such rents, she would be a general creditor of the estate, if anything. *Trecothick* v. *Austin,* 4 Mason, 29; *Johnson* v. *Ames*, 11 Pick. 181; Bump on Bankruptcy, (6th ed.) p. 392; *School Trustees* v. *Irwin*, 25 Ill. 75.

And they could not be held for the amount of the rents paid out by them under the order of the county court, for they held this property as trustees under the will, and were bound to assume the validity of the trust until it was actually impeached. Perry on Trusts, sec. 433; *Beddoes* v. *Pugh*, 26 Beav. 407.

Mr. Justice Mulkey delivered the opinion of the Court:

On the 16th of December, 1870, Orange T. Fargo obtained a decree for divorce, in the circuit court of Cook county, against his wife, the present complainant in the cross-bill, she having subsequently intermarried with John B. Pinneo, her present husband. Through the fraud and treachery of her attorney, Heman H. Haff, in conducting the divorce suit and settling the question of alimony, Fargo obtained the legal title to a valuable farm in Will county, consisting of three hundred acres, which his wife had acquired by descent from Horace Haff, her deceased father. Shortly after the rendition of the decree, Mrs. Fargo, upon discovering the

faithlessness of her attorney, went to the house of her late husband, and in his absence, and without his permission, obtained possession of the deed conveying to him the above mentioned premises, which, through the fraud and imposition of her attorney, and husband, she had unconsciously been induced to execute. By the decree in the divorce suit Fargo was required to pay his divorced wife, in quarterly installments, the sum of $500 per annum as alimony, and this is the only provision that was made for her. Upon her refusal to surrender the deed obtained from her in the manner stated, Fargo, on the 7th of January, 1871, filed, in the Will county circuit court, the original bill in this cause, by which he seeks to compel her to restore the deed executed by her to him, and in the event of its destruction, or her inability to produce it, to make a new one.

It appears from the record that Horace Haff left, at the time of his death, Sarah Ann Haff, his widow, and two children, Edwin G., and Sarah, wife of Fargo, his only heirs, and that he was the owner of other valuable lands besides the three hundred acre farm, and that a partition of these lands was effected by means of mutual conveyances between the heirs. At the request of Fargo, and with the consent of his wife, Edwin G. conveyed his half interest in the farm to Fargo instead of his wife, so that at the time of the commencement of the proceedings for a divorce Fargo already held the legal title to one-half of the farm, while the entire equitable, and the legal title in the other half, were in the wife. It further appears, that in equalizing the partition between the heirs, and in adjusting the widow's claim for dower in her husband's estate, Fargo assumed the payment to her of $2000, which was secured by a mortgage executed by him and his wife on the farm.

Such was the condition of the premises with respect to the title and incumbrances at the time of the execution of the deed sought to be restored by the original bill in this case.

To this bill Mrs. Fargo filed an answer, admitting having taken the deed, and set up in justification of the act the fraud and collusion between the complainant and her attorney, through which it was obtained, and also filed a cross-bill setting up the same facts, and asking that the deed in question be set aside as fraudulent and void, and that the title to the whole of the premises be confirmed in her, and that Fargo be compelled to make the necessary conveyances for that purpose. On the hearing the circuit court denied the relief sought by the cross-bill, and rendered a decree in conformity with the prayer of the original bill. From this decree Sarah Fargo prosecuted an appeal to this court. Pending the appeal, Fargo died, and his executors, Francis Goodspeed and Elizabeth M. Fargo, were substituted as parties, the latter being the widow of the deceased, Fargo having married her a short time after the decree in the divorce suit. The appeal was heard at the September term, 1877, of this court, resulting in a reversal of the decree of the circuit court, and a remanding of the cause for further proceedings, and the case is reported in 87 Ill. page 290, where will be found a full statement of the facts, and hence it is not necessary to repeat them here.

While much additional testimony has been taken since the cause was remanded, yet upon the main question we do not perceive any material change in the legal aspect of the case, as expressed in our former opinion. Most of the additional testimony introduced by complainants in the original bill seems to be offered with a view of showing there was sufficient evidence to authorize the decree in the divorce suit. This is a misapprehension of the scope and purpose of the cross-bill. The *gravamen* of the complaint in the cross-bill is not so much that Mrs. Fargo was without sufficient cause divorced from her husband, as it is that in the conducting of that suit she was the victim of treachery and fraud on the part of her attorney, acting in collusion with the complainant

in the suit, by means of which she was, without any consideration, deprived of a valuable estate. She does not seek to set aside that decree so far as the divorce is concerned, but she does ask that her estate, thus fraudulently obtained, be restored to her. The fact that a married woman may have committed adultery, does not give the husband a title to her lands, or authorize him to resort to fraudulent means to obtain them. It may, therefore, for the purposes of the argument, be conceded that the charge of adultery in the divorce suit is fully sustained, and yet it does not afford the slightest justification of the husband and her faithless attorney in obtaining from her the conveyance of her farm in the manner they did. That her attorney, Haff, was, throughout the divorce proceeding, acting entirely in the interest of the husband, with his knowledge and approval, does not, in our judgment, admit of the slightest doubt. And such being the fact, we know of no principle upon which the transaction can be sustained in a court of equity.

Upon a second hearing of the cause, the circuit court, in conformity with the views expressed by this court on the former hearing, found the equities, both upon the original and cross-bill, with Mrs. Pinneo, and entered a decree accordingly. This decree, after having fixed the rights of the parties, referred the cause to the master for the purpose of taking an account of the rents and profits of the premises during their wrongful detention by Fargo's legal representatives. Subsequently, and before the final order in the cause, Mrs. Pinneo and her husband filed a supplemental cross-bill, making Mrs. Elizabeth M. Fargo, Francis Goodspeed, and Augustus F. Knox, parties, which charges, in substance, that Fargo, by his will, directed the payment of all his debts, and especially the payment out of the rents and profits of the land, the alimony awarded Mrs. Pinneo in the divorce suit; that by the will he specifically devised to his wife a policy of insurance on his life for $5000, all of which, with the excep-

tion of a small sum, she subsequently collected and appropriated to her own use; that no part of the rents and profits of the land have been applied to the payment of the alimony since the remanding of the cause from this court; that while Mrs. Fargo and Goodspeed, as executors of the will, have made partial payments to other creditors of the estate, nothing has been paid on the $2000 mortgage given to the widow of Horace Haff in satisfaction of her dower; that a part of the rents and profits of the land was paid out, under the order of the county court, to other creditors; that Mrs. Fargo, instead of paying off the $2000 mortgage, as she was bound to do under the directions of the will, purchased the same through Goodspeed, her co-executor; that the same was purchased by her with the proceeds of the insurance policy; that Sarah Ann Haff assigned the mortgage to Goodspeed on the 14th of April, 1875, Goodspeed assigned to Elizabeth Fargo on the 25th of the same month, and the latter to Knox on the 9th of December, 1877, and that Knox is now proceeding to foreclose the same for the benefit of Mrs. Fargo. The bill requires an answer under oath, and seeks a discovery of the amount of assets received by the executors, of what they consist, and how they have been disposed of, and prays for an injunction restraining Knox from the further prosecution of the foreclosure suit until the equities of all the parties can be settled in the present suit.

Subsequently, on the 10th of March, 1881, a more elaborate decree was entered in the cause, covering the same ground of the former decree, and not materially variant from it, except the latter decree dismisses the supplemental cross-bill, and also directs that the rents of the farm then in the hands of the receiver be paid over to Knox. From this decree both parties have appealed to this court. The executors complain of the decree upon the original and cross-bills, and Mrs. Pinneo complains of the action of the court in dismissing without a hearing the supplemental cross-bill.

13—104 ILL.

The decree, so far as it relates to the original and cross-bills, as we have already seen, is in conformity with the views of this court as expressed in the former opinion in the case, and the court being still satisfied of their soundness, it follows, the exceptions to the decree to that extent are not, in our opinion, well taken. It only remains, therefore, to determine whether the court erred in dismissing the supplemental cross-bill.

The conclusion having been reached that the farm has all the time, in equity, belonged to complainant in the cross-bill, subject to the mortgage, and the rights of Fargo growing out of the marriage, during his lifetime, it follows, the executors had no authority to apply the rents and profits accruing after the testator's death to their own use, or in payment of the general creditors of the estate. After his decease they clearly belonged to her, subject to the right of the mortgagee or her assigns to have them applied in satisfaction of the mortgage. But until the mortgagee or her assigns took some legal steps to have them thus applied, they belonged to Mrs. Pinneo. Fargo, at the time of the execution of this mortgage, had a freehold estate, *as tenant by the curtesy initiate,* in the premises, which, by the common law, is one species of life estates. The freehold being in Fargo, it was necessary to its full enjoyment that the dower of Horace Haff's widow should be in some manner extinguished, and to accomplish this object he gave to her his note for $2000, secured by a mortgage on the premises. It is to be noted this right of dower did not necessarily affect the inheritance in the wife, and at the time of the transaction it was altogether uncertain whether it ever would affect her interest. Whether it would or not, depended upon whether Mrs. Haff, the dowress, would survive Mrs. Fargo, the owner of the reversion, which, in the natural course of events, might or might not be. It will thus be seen that the mortgage debt was not only his, in the strictest sense of the term, but it was created mainly for

his benefit, and hence his own estate was the primary fund out of which it should have been paid. She and her estate should, therefore, as between her and his legal representatives, be treated as only secondarily liable. It follows, therefore, that all rents and profits, after his death, in excess of taxes, necessary repairs, etc., in equity belonged to appellant, and should have been paid by the executors to her, for it is well settled that until the mortgagee interposes, the rents are payable to the mortgagor, and if this was not done, inasmuch as the mortgage now belongs to Mrs. Fargo, one of the executors, it must, in adjusting the account between her and Mrs. Pinneo, be treated as having been paid on the mortgage debt at the time the rents became due. The mortgage having been assigned to Goodspeed, for the use of Mrs. Fargo, on the 14th of April, 1875, she should from thence until the appointment of a receiver be treated as mortgagee in possession, and should account for the rents and profits accordingly, and they should be applied from year to year, as they accrue, less the taxes, necessary repairs, etc., upon the mortgage indebtedness.

It is evident from this statement, that Mrs. Fargo, both in her character as executrix and mortgagee in possession, and Knox, her trustee, were not only proper, but necessary, parties to the statement of the account. Most of these complications and changes of interest occurred after the filing of the original and the cross-bill, and we are of opinion it was proper to bring all the parties interested in the statement of the account before the court, and this could only be done by a supplemental bill. The impropriety of proceeding without such a bill is clearly shown by ordering the amount of rents on hand to be paid to Knox, who, after the dismissal of the supplemental cross-bill, was not a party to the suit, and hence was not bound by the statement of the account, or any of the proceedings in it. While the evidence shows the mortgage was assigned by her to Knox, it also appears that

it was without consideration, and that he is simply her trustee, he having no personal interest in the matter whatever.

The statement of the account by the master is not sufficiently specific or comprehensive, nor does it seem to have been prepared with reference to the legal rights of the parties affected by it. Fargo's estate, as we have already seen, is primarily liable for the whole of the mortgage debt. If the estate is insolvent, as is claimed by the executors, this debt must be paid *pro rata* with other debts of the same class. If other creditors have already received more than their shares upon a *pro rata* basis, then a sufficient amount should be paid on this claim to place it upon the same footing with other claims of the same class. Should the assets of the estate be thus exhausted in the payment of its debts, whatever, if anything, remains unpaid of the mortgage debt must be satisfied out of the rents and profits of the land in the hands of the executors, and the residue, if any, must be paid to Mrs. Pinneo. If, on the other hand, they should prove insufficient for that purpose, the mortgaged premises would, as a last resort, be liable for the deficit, whatever that might be. These are the general principles controlling the rights of the parties, and the account should be so stated as to enable the court to properly apply them.

What is here said, of course, is based upon the facts as already found by the court, and the additional facts as set forth in the supplemental bill, which, for the purposes of the question in hand, must be treated as true. So much of the decree, therefore, as directs a dismissal of the supplemental cross-bill, and approves of the report of the master, and directs the accumulated rents and profits of the premises to be paid to Knox, is reversed, but is in all other respects, except so far as it may be modified by what we have already said, affirmed, and the cause is remanded, with directions to the court below to refer the cause again to the master for the purpose of

restating the account, and for further proceedings in conformity with the views here expressed. Upon the filing of the remanding order, the court below is further directed to require counsel for Mrs. Pinneo to eliminate from the supplemental cross-bill the vast amount of irrelevant and impertinent matter therein contained. Upon examination of it we find that it fills some thirty pages of the abstract, and that at least three-fifths of it consists of impertinent and unimportant matter. The object of a pleading of any kind is to state the facts upon which the legal rights of the parties depend, and nothing more, and to inject into one, as was done in this case, a mere legal argument, and the numerous reasons which occur to counsel as why this or that step should or should not be taken in the cause, is a gross imposition, not only upon the opposite party, but also upon the court. Ordinarily this court will not interpose, where no complaint is made by the opposite party; but where the rules regulating pleadings in this respect have been violated to the extraordinary extent they have in the present case, and such violation is so palpable and manifest, this court must, for its own protection and the prevention of such abuses, interpose.

*Decree reversed in part and in part affirmed.*

Subsequently, upon an application for a rehearing, the following additional opinion was filed:

PER CURIAM: The opinion as originally prepared in this case upon the present appeal, in laying down the general principles which should govern the court below in adjusting the equities of the parties, as they appear from the findings of that court, and as they are shown to be by the supplemental cross-bill, proceeded upon the theory that Fargo was merely tenant *jure uxoris* of the lands in controversy, and upon this hypothesis, of course, as was then stated, his interest in the premises would have terminated with the dissolu-

tion of the marriage, without regard to the means by which it was accomplished, for the estate of the husband having no other interest in the property, is always in such case measured by the duration of the marital relation. The theory of the opinion, as matter of law, upon the facts assumed, was sound, but by inadvertence it overlooked the important fact that Fargo was also *tenant by the curtesy initiate* at the time of the divorce, which, unless granted for his fault, could not affect his rights as such tenant during his own life. The rents and profits, therefore, of the farm belonged to him during his life, and of course his estate should not be charged with them till after his decease. The rehearing was granted on account of this oversight, and the original opinion has been corrected in the respect stated, and in some other formal particulars not necessary to be specifically noted, and thus modified has been re-filed as the opinion in the case.

The persistence with which one or two matters are urged in the petition for a rehearing induces us to add, in a *per curiam*, a few considerations to what we have already said in the principal opinion.

Counsel complain that the decree of the court below is inequitable, in this, that it sets aside the agreement and conveyance by which Fargo acquired title to his wife's lands, and yet permits the decree for alimony to remain in full force. This question was in effect settled when the cause was before us on the first appeal, and upon a petition for a rehearing, subsequently filed in the case, we, on due deliberation, refused to modify what was then said. By that decision the decree granting the divorce and awarding alimony was left in full force, notwithstanding the circumstances under which it had been obtained, and there was a manifest propriety in doing so. The court had power to render it, and it was clearly binding upon the parties until reversed or otherwise set aside. Neither of the parties to it

Additional opinion of the Court.

has appealed from it, nor have they in any manner sought
to otherwise impeach it in the respect mentioned, nor do
we perceive anything in this record that would warrant it.
Neither the original bill, cross-bill, nor the supplemental
cross-bill, asks such relief, or contemplates a decree of that
kind. It is a familiar rule of chancery practice that no
relief will be decreed which is not warranted by the general
scope of the pleadings.

The court having jurisdiction over the parties and the
subject matter of the suit, notwithstanding the fraud of the
complainant and his counsel, as we have just seen, had
the requisite power to grant the divorce and award the ali-
mony, as was done, and no appeal having ever been prose-
cuted by either of the parties from that decree, or other direct
proceeding instituted for the purpose of setting it aside, it
follows, the decree is still binding on the parties in so far as
the court was acting within its jurisdiction. As an incident
of the power to grant the divorce, the court was authorized
to award alimony to the wife, payable out of the husband's
estate, but the power to grant a divorce afforded no authority
for taking the estate of the wife and giving it to the husband
without consideration, although he may have had just grounds
for a divorce. But it is said in the present case this was
done with her consent. True it is, but this consent was
obtained by the basest treachery of her solicitor, acting in
concert with her husband, and consequently no advantage
can accrue from consent thus obtained, nor can any right be
founded upon it. While the cross-bill of Mrs. Pinneo does
not seek to disturb the decree for divorce and alimony, yet it
does directly attack the agreement in question, and all pro-
ceedings founded thereon, so far as they affect her own estate,
and this she had a perfect right to do, as was distinctly held
in the original opinion in this case above referred to, and her
exercise of this right does not at all affect the binding force of
the decree for divorce and alimony. As we have just seen,

so far as that decree is concerned no one has ever asked to have it set aside, or otherwise to be relieved from the obligations and duties it imposes, and certainly the court has no right, on its own motion, to interpose in their behalf.

The point is also made that the executors were not bound to pay the mortgage debt until it was allowed and ordered to be paid by the county court. This position is not tenable. As appears from the supplemental cross-bill, as well as the proofs in the case, Fargo, by his will, expressly directs his executors to pay off this incumbrance upon the land, and they have no right, in the face of this provision of the will, to go on and exhaust the assets of the estate in the payment of other claims, to the exclusion of this one altogether. Nor does the fact this claim was directed to be paid out of a fund that did not belong to the estate make any difference in this respect. The direction to pay it at all was a direct recognition of the justness of the claim, and if the direction to pay was coupled with a condition that could not legally be performed, the condition is to be rejected altogether, leaving the direction to pay absolute. If an order of court was necessary to authorize the payment, it was their duty under the will to obtain one, or at least make an effort to do so. But nothing of this kind was done. From the charges in the supplemental cross-bill it would seem the course pursued was adopted for the express purpose of throwing the whole burden of this claim upon the mortgaged premises, so as to defeat Mrs. Pinneo's rights altogether. But such subterfuges as these will not be permitted in a court of equity to defeat the ends of justice, however cunningly devised.