## SARAH PINNEO ET AL.

### v.

## FRANCIS GOODSPEED ET AL.

*Former Adjudication—Restatement of Account—Administration—Mortgage—Subrogation—Interest—Insurance.*

Upon appeal from a decree based on a restatement of an account in a case remanded by the Supreme Court for that purpose, the principal parties being a divorced wife, to whom had been decreed the title of a tract of land fraudulently obtained from her by her former husband, and the widow of the latter, it is *held:* That the purchaser of an outstanding mortgage as trustee for the widow was not bound by the former proceedings; that the manner of estimating the rents, whether *according to the reasonable value or actual* receipts, was open for the court below to adopt any legal method; that it was proper to fix the rental value on the basis of actual receipts, which is all the executor and executrix, the widow, in possession under the mortgage, should be required to pay; that the divorced wife was properly charged with certain sums paid to her on account of alimony in the course of administration from the rents of said land, said payments having been made prior to the establishment of her title to the land and while the estate was believed to be solvent; that she should not be allowed a dividend of forty per cent. on the amount secured by said mortgage merely because such dividend has been paid through mistake on the other seventh-class claims against the estate; that the widow is entitled to be subrogated to all the rights of the original holders of the note and mortgage, she having purchased them with her own funds; that the divorced wife is not entitled to the benefit of the small discount allowed; and that she is chargeable with ten per cent. interest on the principal of said note until the date of settlement, and with the amount paid for insurance.

[Opinion filed December 11, 1886.]

APPEAL from the Circuit Court of Will County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Statement by LACEY, J.   This is the same case which will be found reported in 87 Ill. 290, and also again in 104 Ill. 184, and which opinions are re‑ ‑rred to for a full statement of the facts.

It will not be necessary to again recite the facts in the case

further than to state in brief the nature of the supplemental cross-bill. When the case was taken back to the Circuit Court in pursuance to the remanding order, and the supplemental cross-bill of appellants, which had been dismissed by the former decree, and for which dismissal in part the decree was reversed, was duly eliminated and amended as ordered by the Supreme Court, it was refiled February 12, 1884. The amended supplemental cross-bill after being refiled contained the same allegations in substance that it did at the time it was stricken from the files, as will appear by reference to it in the opinion of the Supreme Court (104 Ill. 184). It averred that Orange T. Fargo, November 3, 1874, died possessed of the 300 acres of land in question, holding it as a tenant by the courtesy at the time of his death subject to the reversionary interest of his former wife, appellant; that he gave directions in his will as shown by the record that the executor and executrix of the will, Francis Goodspeed and Elizabeth E. Fargo, administered the estate under the will, rented the said farm and received the rents from the time of their appointment and from Fargo's death; that the account of rents ought to be taken according to said opinion; that a large amount of other property, real and personal, belonged to said estate; refers to the proceedings of the County Court for a partition of such personal estate received; * * * that Elizabeth Fargo purchased the $2,000 mortgage given by Fargo in his life to Mrs. Haff for the extinguishment of her dower, and for which deceased had given his note and appellant Sarah and he had given their joint mortgage on the said land to secure with money belonging to the estate, and that she ought to satisfy it; that in violation of her duty as executrix she purchased it and ought not to be allowed to profit by it, and interest should stop from the day of purchase; that Augustus M. Knox had purchased it for her and held it as her trustee, and had commenced action on said note and mortgage, and had obtained judgment in said court, and it ought to be consolidated with this suit, and he perpetually enjoined from foreclosing the mortgage. That a large amount was due her on decree in the Cook County Circuit Court (alimony decree in divorce pro-

ceedings) ; and that the executors should have paid her the ratable proportion of Fargo's estate. Then follows prayer for full, true and particular answer upon their several corporate oaths to each allegation, with several interrogatories in regard to the amount of rents on said farm received by him, and this one : "Do not the whole amount of rents of said farm received amount to the sum of $3,975.35, and were not the rents of the farm received as the property of the estate, and does he not still hold them as assets ? Why were other debts paid in preference to the mortgage ? On what account was the $1,125 paid by said Goodspeed to orator (this was on her alimony)?

Answer of Goodspeed under oath, completely and specifically answering as to all the charges and questions. It shows that he and Mrs. Elizabeth Fargo were appointed executor and executrix, October, 1877, and continued to act and collect rents till January term, 1879, of Will County Circuit Court, when a receiver was appointed; shows net amount of rent received of $3,549.18, after paying $391.92 for taxes, and $34.25 for insurance on buildings on the land in question. That twenty per cent. of this amount should be deducted for rent of an eighty-acre tract of land other than the 300 acres, and that this eighty acres was of like rental value with the 300 acres. And making other and complete answer not necessary fully to recite. Mrs. Elizabeth Fargo and Knox also answered, all under oath. Replications were filed by leave of the court, after striking from the files exceptions to answer of Goodspeed for the reason that they were filed without leave, and that appellant had failed to comply with the order of court to reply, which was still in force, and time limited by the rule of court had expired.

The cause was then referred to the master by the court, who in the order of reference was required to state an account between the executors and the estate of said deceased from the answers and exhibits of the said executors to said supplemental cross-bill, filed February 12, 1884, and that he charge the total amount of assets that came into their possession, 1st, from personal estate, including interest exclusive of rent; 2d,

rents from real estate, exclusive of said 300 acres, and money arising from sale of real estate to pay debts, if any; that he credit them with all sums paid out by such executors exclusive of sums paid on account of said 300 acres, etc.; to find aggregate amount of claims allowed against the estate of each class, and of payment on claims, and on each class, when, and rate per cent. paid, and total amount unpaid in each class, etc.

The master's report was presented, and decree rendered in accordance. The decree ordered that the executors pay said Knox or to E. M. Fargo, $1,629.07, to be applied in her decree of foreclosure on the 300-acre tract of date December 7, 1880; that complainant in cross-bill, Mrs. Pinneo, pay to same parties $2,445.38, with six per cent. interest from December 7, 1880, in thirty days; that in default, the master sell the 300 acres, or so much as necessary to pay said last mentioned sum, the balance due on the decree of December 7, 1880. From this decree this appeal is taken.

Mr. R. E. BARBER, for appellants.

The executors were trustees under the will and in the discharge of the duties of their office. As such they were not at liberty to deal in the matter or things with which they were charged to their personal advantage or profit. Thorp v. McCullom, 1 Gilm. 614, and cases cited; R. & M. R. R. Co. v. F. L. & T. Co., 49 Ill. 331; Ogden v. Larrabee, 57 Ill. 389; Nelson v. Hayner, 66 Ill. 487; G., C. & S. R. R. Co. v. Kelly, 77 Ill. 426.

The executors were trustees to pay the note and mortgage in controversy, not alone under the duties of their office, but especially charged thereto by the will and by the obligation of the testator in said agreement of October 25, 1870. Being trustees to pay that note, they were not at liberty to purchase it to their personal advantage or profit. Sarah Fargo, now Pinneo, was the *cestui que trust* for the faithful discharge by the trustees of their duty to pay that note. Under this relationship of the trustees and *cestui que trust*, on April 15, 1875, the executor purchased said note and mortgage of the

payee and mortgagee more than four years after their maturity for the sum of $2,800, when at same day there was due and unpaid on the note $2,944.95, thus getting an abatement by the payee of $144.95 from the face of the note.

The executrix paid $2,840 for the note and mortgage. Thus in the purchase the executors took and received $40, and the executrix $104.95, as their respective personal profit in the item of the purchase. The full sum of $2,944.95, from said date of purchase, was carried into the account stated by the master and into the final decree. If the purchase was made with funds which should be accounted assets of the estate, then it was a payment and satisfaction of the note and mortgage.

If made with funds which were personal funds of the trustees, then it can not be, to their personal profit, gain or advantage. Between maker and payee the note was a ten per cent. obligation. In this purchase by trustees to the use of *cestui que trust*, a new phase of the obligation is created as between the purchasers, being trustees, and *cestui que trust*, and only equitable remuneration to trustee as between trustee and beneficiary could be thereafter charged and enforced. The trustees and their trustee, Knox, come into a court of equity to enforce collection of the note out of Sarah Pinneo's land. They must do equity in every particular connected with it.

The trustees, said executors, were the agents of the estate and of Sarah Fargo (now Mrs. Pinneo), for paying that note and mortgage. If, in making the payment or in any way adjusting it with the payee, they obtained an abatement of the sum due upon the note, then the beneficiaries and not themselves are entitled to the benefit of the abatement. Phelps v. Reeder, 39 Ill. 172.

The order of reference to the master, of October 13, 1885, was restrictive in all its directions, was in conflict with the opinion and directions of the Supreme Court in this case, and with the pleading and evidence herein. The Cook County Circuit Court decree provided for the payment of $500 annually, in quarterly payments of $125, "during her natural life," by said Orange to said Sarah.

There is no contingency in that decree upon the life of Orange. The period of the time of payment can only be determined by the death of Sarah.

Under the decision of the Supreme Court in Pinneo v. Goodspeed, 104 Ill. 184, 198, it was the duty of the executors to make payment as provided by the Cook County Circuit Court decree; and yet those payments by the executors to Sarah are now charged to her as and for rents and profits of her lands, and as such rents are carried into the master's report and final decree to the sum of $1,125, notwithstanding they were explicitly paid to her as and for her alimony, "as provided for in divorce proceedings"—they are now wholly repudiated as payments under said divorce decree.

The executors were advised by the Supreme Court of the ownership of the rents and profits, by its opinion at the September term, 1877 (87 Ill. 290). And yet they persisted in the dividend of forty per cent. to seventh-class claims, and abide by it yet.

And with that dividend of forty per cent. paid on all seventh-class claims (except said mortgage claims) was paid 100 per cent. of the seventh-class claim of one Cyrus Coplantz; and the executors abide by those payments still, notwithstanding the Supreme Court direct that " if the estate is insolvent, as is claimed by the executors, this debt must be paid *pro rata* with other debts of the same class. If other creditors have already received more than their shares upon a *pro rata* basis, then a sufficient amount should be paid on this claim to place it upon the same footing with other claims of the same class." Pinneo v. Goodspeed, 104 Ill. 184, 196.

Yet nothing of that kind has been done for the mortgage claim, and the partiality of the executors as between claims of the seventh class still remains uncured, even though the rents and profits which belonged to Mrs. Pinneo composed a part of the fund from which that forty per cent. dividend was paid; and that, too, when the executors were wrongdoers in taking the possession of her lands and renting the same and receiving the rents thereof, and as *tort feasors* are chargeable according to the rule of the law in *torts*.

She was entitled to receive the possession of her lands as soon as Fargo died, and thereafter to manage them and receive the rents.

Messrs. Garnsey & Knox, for appellees.

The opinion of the Supreme Court must be read in connection with the pleadings as they stood at the time of the hearing. Griggs v. Gear, 3 Gil. 2; Burkett v. Wabash R'y, 98 Ill. 205, 213; Pinneo v. Goodspeed, 104 Ill. 184, 194, 195; Marvin v. Collins, 98 Ill. 510, 517.

The doctrine of *res adjudicata*, here invoked, does not at all apply. A judgment is conclusive upon the parties to it, only in respect to the grounds covered by it, and the law and facts necessary to uphold it. Bigelow on Estoppel, 22; Davis v. Kennedy, 105 Ill. 300, 306.

A judgment to be binding must be about the same subject-matter as well as between the same parties. Miller v. McManus, 57 Ill. 126; Williams v. Walker, 62 Ill. 517; Jessup v. Jessup, 102 Ill. 480, 486; Kingsbury v. Buckner, 70 Ill. 514; Russell v. Epler, 10 Ill. App. 304.

And to determine the question the pleadings must be looked to to see whether the matters insisted on as *res adjudicata* could have been inquired into. Bentley v. O'Bryan, 111 Ill. 53, 60.

The executors took the estate as they found it, and were bound to endeavor to fairly uphold it in the condition it was in. They are only chargeable with the amount of rent actually received, they acting in good faith and with reasonable prudence and diligence. McConnell v. Holobush, 11 Ill. 61; Mosier v. Norton, 83 Ill. 519; Clark v. Finlon, 90 Ill. 245.

The credit to the executors of $1,125, paid by them to Mrs. Pinneo, was proper. If it was alimony it ceased on her husband's death. Lockridge v. Lockridge, 3 Dana, 28; S. C., 28 Am. Dec. 52; Lenahan v. O'Keefe, 107 Ill. 620; O'Hagan v. O'Hagan, 4 Clarke, 509. If it was a payment under Fargo's will the fund out of which it was to be paid, by the terms of the will, was destroyed by the case of Pinneo v. Goodspeed, 104 Ill. 189. The full amount of the mortgage must be paid

by somebody; the purchase by Mrs. Fargo, with her own funds, subrogated her to Mrs. Haff's (the mortgagee's) rights. King v. Cushman, 41 Ill. 31, 38; O'Halloran v. Fitzgerald, 71 Ill. 53, 58; Stinson v. Anderson, 96 Ill. 373. And to collect ten per cent. interest on it to the date of foreclosure. Condict v. Flower, 106 Ill. 105, 117.

Having actually no funds to pay with, the executors are not obliged to pay anything on this mortgage, even if they did by mistake make a dividend on claims of the seventh class in Fargo's estate. Brandon v. Brown, 106 Ill. 519.

The Circuit Court can not in this case adjudicate and settle Fargo's estate. It can only determine that, as to seventh-class claims, the estate is insolvent, and this it has done.

LACEY, J. The appellants ask the reversal of the decree for the following reasons: The court below erred in charging against her in the accounts of rents and profits coming to her on the 300-acre tract of land, certain payments made by the executor Goodspeed, to her, of sums of money in the aggregate amounting to $1,125, which had been receipted for by her as payments on her life decree of $500 per annum allowed in the divorce proceedings against her late husband, Orange Fargo; for not allowing the abatement of $144.95 which Elizabeth M. Fargo and Goodspeed got deducted from the amount of accrued interest on the said mortgage against the 300 acres of appellants' land, at the time they purchased it of Mrs. Haff; and for allowing ten per cent. interest to Mrs. E. M. Fargo on her note secured by the same mortgage, from its purchase to December 10, 1880; and for not allowing her rents to her on the said 300 acres of land while managed by the executors at the same rate allowed by the former master, upon which the decree was based, reversed in part by the Supreme Court, reported in 104 Ill. 184, to wit, at $3 per acre per annum, instead of on the basis of the actual receipts, as was done by the master at this hearing, under the direction of the court; and for not crediting this note with a dividend of forty per cent., the same as had been paid by the executors on other seventh-class claims. Lastly $34 was wrongfully allowed

to Goodspeed, executor, for money paid as insurance on the buildings on the 300-acre tract of land while he managed it.

These are the only objections urged against the justness of the decree.

It will be seen that the supplemental cross-bill on which this trial was had was the only one to which Knox was a party, and of which the Supreme Court say, "most of these complications and changes of interest accrued after the filing of the original and cross-bill, and we are of the opinion it was proper to bring all the parties interested in the settlement of the account before the court, and this could only be done by a supplemental bill;" and they say Knox "was not bound by the statement of the account or any of the proceedings."

The scope of the supplemental cross-bill was sufficiently broad to require an answer from the executor, Goodspeed, and the executrix, Mrs. Fargo, and Knox, as to the amount of the rents received. In fact the executors were directly questioned as to the amount, which Goodspeed answered in full, specifically showing the exact amount received and the amount paid out for taxes and insurance. It is strenuously insisted by counsel for appellants that the question of the manner of estimating the rent, and in fact the amount of it, was a matter fully settled by the Supreme Court in its decision and remanding order; that the entire question was *res adjudicata*. If what the Supreme Court says is correct, that Knox was not bound by the statement of account or any of the proceedings, it can not be that the court would undertake to conclude Knox by forever settling the account before he had had an opportunity to be heard. In fact the court did not do so, nor attempt to do so. It says that "the statement of the account by the master is not sufficiently specific or comprehensive, nor does it seem to have been prepared with reference to the legal rights of the parties affected by it." In the order of the court reversing the case, it is said: "So much of the decree, therefore, as directs a dismissal of the supplemental cross-bill and approves of the report of the master, and directs the accrued rents and profits of the premises to be paid to Knox, is reversed, but is in all other respects except so far as it may be

modified by what we have already said, affirmed, and the cause remanded with directions to the court below to refer the cause again to the master for the purpose of restating the account, and for other proceedings in conformity with the views here expressed."

There was no order in the opinion or decree of reversal to state the account on the same evidence. The master's former report and statement of account was nullified and a new account was ordered, and on this reversed report the decree of the Circuit and the opinion of the Supreme Court was based. There was no order not to offer new evidence before the master, and from the fact that an issue was to be formed on the allegations of the supplemental cross-bill it was more than probable new evidence would be taken, as Knox was not bound by the former proceedings. Nowhere in the opinion is the manner of estimating the rent indicated, whether according to the reasonable value of the actual receipts. This question not having been settled it was open for the court below to adopt any legal method it desired, and where there is proof as to what the actual receipts were, it is the legal method to fix the rental value on such basis. McConnell v. Holobush, 11 Ill. 61; Mosier v. Norton, 83 Ill. 519. The Supreme Court say, 104 Ill. 195: " The mortgage having been assigned to Goodspeed for the use of Mrs. Fargo on the 14th April, 1875, she should from thence until the appointment of the receiver be treated as mortgagee in possession, and should account for the rents and profits accordingly, and they should be applied from year to year as they accrue, less the taxes, necessary repairs, etc., upon the mortgage indebtedness." So there can be no dispute as to what position Mrs. Fargo and her agent, Goodspeed, occupied in the eyes of the law after the latter purchased the mortgage. In the master's report the rents were accounted for which accrued on the said land of Mrs. Pinneo from the time of the death of her late husband, Fargo, in 1874, to the time the receiver was appointed, in 1879, on the basis of what was actually received. This was a correct legal basis, and all in equity and good conscience the executor and executrix, or Mrs. Fargo, in possession under the mort-

gage, ought to be required to pay; and the court below, not having been concluded by any action of the Supreme Court in the manner of computing the accrued rents, was not in error in ordering the master to compute it on the basis adopted, and as upon the sworn answers of the executor and executrix the master was justified in doing. There is no evidence appearing in this record, or at least none is shown by the abstract, to show what evidence was before the master on the former hearing, and we therefore can not determine whether there was sufficient basis in that evidence to justify the master in the present case in fixing the rent on the basis of the actual receipt or not, but certainly the sworn answers were sufficient. We therefore hold that the point made by counsel for appellants under this head is not well taken.

The two following objections, raised by the appellants' counsel, we will consider together, to wit: The charging against her in her rent account by the executors the sum of $1,125, paid to her at different times between May 31, 1875, and May 21, 1877, as on her alimony account on the Chicago decree; and the other objection that the executors should have paid forty per cent. dividend on the decree of foreclosure in favor of Knox, against the said 300-acre tract of land, so that such decree should be reduced to that extent, the estate of Fargo being bound for it, and the said amount of forty per cent. having been paid by the executors on some other seventh-class claims. As the two objections are clearly allied, and the reasons for allowing or rejecting them being nearly identical, they can more conveniently be considered together. It will appear, upon examination of the foregoing opinions of the Supreme Court in this case and the evidence herein, that at the time of the death of the said Orange T. Fargo, November, 1874, this suit was pending against him in the Supreme Court on the appeal of his former wife, one of the appellants herein, the Circuit Court having rendered a decree in his favor on his original bill. The cause was continued in the Supreme Court till after the September term, 1877, when an opinion was filed in the Supreme Court in the case reversing the decree of the Circuit Court and holding that Mrs. Pinneo

Pinneo v. Goodspeed.

was the rightful owner of the 300 acres of land in question. The executrix thereupon filed a petition for a rehearing which was afterward, in March, 1878, denied.

Fargo's will provided that if the appellant Sarah Fargo lived, the farm in Troy (the 300 acres in question) could not be sold, and the quarterly installments to her must be paid from the rents of the said farm; but if she should die, then the said farm may be sold at the option of the executors of the will as in their judgment should seem best. The proceeds of the sale of the said farm and all such other property as the testator should die possessed of was to be divided equally among his four children or as many of them as shall be living.

The executor and executrix undertook the work of executing the provisions of the will and during several years pending the first appeal in the Supreme Court proceeded to collect the rents of the land in question and pay the appellant her quarterly installments out of them, and to settle up the affairs of the estate generally under the orders of the County Court. The $1,125 in question was paid out of those rents as the will directed, and a considerable sum of money remained over, arising from the rents. The estate of Fargo aside from this tract of land was hopelessly insolvent—with it there was plenty of assets to pay all the debts. There was a large amount of claims of a class or classes that took precedence of the seventh-class claims and was entitled to be first paid, allowed against the estate, and also a large amount of seventh class was allowed; the mortgage in question, and also the Chicago so-called alimony decree of appellant, Mrs. Pinneo, as claims against the estate of Orange T. Fargo, were only entitled to be allowed as seventh class.

In March, 1876, the executor, Goodspeed, having collected a large amount of assets and received rents from the realty, obtained an order from the County Court to pay a dividend of forty per cent. on the seventh-class claims, and made such payments on certain of them to the amount of $1,389.07, which the executors reported to the County Court, which was approved; but no portion was paid on the Chicago decree other than the $1,125, and none on the mortgage debt.

The answers of appellees clearly show that without the rents accruing on the tract of land recovered by appellant from the estate there were not enough assets to pay the proper costs and charges against it, and the first, second, third, fifth and sixth-class claims, and the expenses of administration, and that there was no fund to pay any part of the said seventh-class claims. The land in question was recovered by Mrs. Pinneo, together with all the rents and profits arising from it from the date of Orange T. Fargo's death, and the two executors have been required to account for it to her in the accounting. There is no doubt that in all these transactions the executors acted in the utmost good faith, believing that the decree of the Circuit Court confirming the title in the land to the deceased Fargo would be sustained by the Supreme Court; but it turned out that they were mistaken. In case they are not able to recover the amount of money paid out on the seventh-class claims from the creditors to whom it was paid, they will be compelled, personally, to stand the loss. There certainly can be no equity in any other seventh-class creditor who has not received such dividend, demanding it after the true state of the case has been developed.

It is insisted that because such dividend has been paid to a portion of that class of creditors in order to create equality, others should receive the same. This would be a good rule where there is as much or more equity in establishing an equality than in not doing so. It could not be just that appellees, who paid this money out to a class of creditors not entitled to it through mistake and misconception, should be compelled to still pay to others something which, but for such mistake, no one would contend they ought to be required to do. Nor could any technical rule against going behind the executors' report to the County Court, which shows that they had this money in their hands belonging to the estate, avail appellant. That was made under the same mistake and was not in fact true. Any reasoning that would establish a liability in law against appellees in favor of the seventh-class creditors not having received such dividend would establish a rule that would do great injustice, which it is the boast of the law it

never does. Brandon v. Brown, 106 Ill. 519, establishes a rule broad enough to cover this case. The administrator's report in that case was not held so sacred that the administrator was held bound by it when circumstances were such as to make it unjust to bind him by it; this is in a court of equity where the appellant is asking equity, and she ought to be required to do equity. The appellant has taken to herself by force of the law the identical assets out of which appellees expected to pay their seventh-class claims, leaving nothing more in their hands, and ought to be content.

For the same reason the appellant was properly charged with the $1,825. It was received from the rents of this land which she had a right to claim as her own, and has received it; but in paying it to her the appellees were under the same mistaken views as to their rights or their ability to pay as they were in paying out the forty per cent. dividend, and took the receipts as though it were paid on the alimony decree.

Admitting that the alimony decree did not cease at the death of Fargo, a point we do not decide, it was only a seventh-class claim, and not entitled to any payment, as we have shown. As appellant Pinneo actually received the money, and equity requires that it should be charged to the rent account, it ought to be so done, and the court below in doing so did not err.

The only remaining errors assigned are the ones arising out of the court below allowing to Mrs. E. M. Fargo, or to Knox, the full amount of the note and ten per cent. interest, which she, through Goodspeed, purchased of Mrs. Haff, and the $34 item for the insurance of the buildings on the land in question.

That the appellee, Mrs. Fargo, is entitled to be subrogated to all the rights of the original holders of the note and mortgage there can be no question. Not having any funds in her hands belonging to the estate of Orange T. Fargo applicable to the payment of seventh-class claims, such as this was, she furnished her own money and purchased in the mortgage debt and relieved the estate of the pressure. The estate was not in the least injured by this, and should be required to pay

to appellee the same as it would have been obliged to do in case she had not purchased it. There was some $944 accrued interest on the note at the time of its purchase and the note of $2,000 and this interest was purchased in for $2,800. The note has run for over ten years since that time and before final adjustment, the $800 drawing no interest whatever, interest being only allowed on the principal. It would not be inequitable, but highly equitable, to take no notice of the small discount, but to allow the entire interest due just as it was when purchased, and the principal sum and ten per cent. on that sum up to the time of settlement. King v. Cushman, 41 Ill. 31, 38; O'Halloran v. Fitzgerald, 71 Ill. 53, 58; Stinson v. Anderson, 96 Ill. 373; Condict v. Flower, 106 Ill. 105, 117.

Another consideration is that as to Mrs. Pinneo, the appellee, Mrs. Fargo, by reason of being the executrix of the estate of Orange T. Fargo, deceased, never stood in the relationship of trustee or in any fiduciary relation. And as the executors never had any money, as it appears, to pay any portion of said note as a seventh-class claim against the estate, she was under no duty to pay any portion of the note at the time she purchased it, and as the matter was indifferent, so far as the estate was concerned, whether the amount of the note was large or small, Mrs. Pinneo ought not to claim any discount through any supposed equities of the estate.

We see no error in the computation on said note and interest thereon.

As to the small item of $34 for insurance, we think it was properly allowed. The appellant assumes that the insurance was not taken for the benefit of the inheritance; but for the executors; but we think she is not justified in this, for Goodspeed's answer shows this insurance was paid out of the rent for the benefit of the farm, and under such circumstances the insurance money in case of loss would be in equity payable to the owner of the title, whoever he or she might be. As far as we can determine from the answer, we see no error in that particular. We have noticed all the objections we regard of any importance, and think the decree is eminently just to all par-

ties and in accordance with the opinion of the Supreme Court and therefore the decree of the court below is in all things affirmed.

*Decree affirmed.*